# New Hanover Road.

1. Under the Road Act of 13th June, 1836, *five* of the *six* persons appointed re-reviewers of a public road, may view and report, and it was *held*, not to be material whether the other person appointed as viewer was absent, or whether being present he refused to sign the report.

2. The draft of the road reported may be attached by the viewers or by another person authorized by them to do so; and it may be attached after they have signed the report and separated.

3. If there be a material omission or variation in the draft from the courses and distances stated in the report, it may be recommitted to the viewers for alteration.

CERTIORARI to the Court of Quarter Sessions of *Montgomery county*, in the matter of the road in the township of New Hanover, Montgomery county, beginning at a public road leading from Kutztown to Philadelphia, near the Reformed church, on the line dividing lands of Daniel Gilbert and Francis Weand, and terminating at a public road leading from the Swamp to Pottstown, on the lands of Isaac Yost, in the township of New Hanover.

On May 20, 1850, upon petition, viewers were appointed; August 19, 1850, report of viewers filed, laying out the road and returning a draft thereof; and August 22, 1850, the report was approved, and road ordered to be opened 33 feet in breadth; November 18, 1850, upon petition the Court appointed a jury to review said road; and at February sessions, 1851, the reviewers reported that there was no occasion for such road. February 17, 1851, report of reviewers filed, and February 24, 1851, report approved by the Court.

May 21, 1851, upon petition the Court appointed six persons to *re-review* said road. At August sessions, 1851, five of the re-reviewers reported the same road laid out by the first jury, and returned a draft in some respects similar to that attached to the first report, but differing from it in some particulars. The report of the five re-reviewers was filed August 18, 1851; and August 22,

[New Hanover Road.]

1851, the report was approved, and the road ordered to be opened 33 feet in breadth.

September 30, 1851, exceptions to the report of re-reviewers were filed on the part of Isaac Yost. Exception 1. The improvements on the land through which the proposed road is to pass, are not all noted in the draft or report. 2. The report does not state whether John Steiner, one of the re-reviewers appointed by the Court, was present or not at the re-review of said road. 3. The draft now annexed to the report, was attached after the report was signed by the jury, and after they had separated, and was not seen by the said re-reviewers at all.

December 24, 1851, a rule was entered by exceptor's attorney to take depositions, to be read in the argument of above exceptions. On December 31, 1851, the deposition of Wm. H. Schneider was taken.

He testified:—I was the surveyor who surveyed this road laid out by the re-reviewers; I drew up the report, and made out the draft; the improvements are all noted on the draft; there is a house and barn on Isaac Yost's land, about eighty perches from the road; they are nearer the old road than the new road. There is a building on Francis Weand's land, on the Swamp road; it is on the land along which this road passes. There are buildings on David Gilbert's land, on the Swamp road; the new road passes along Gilbert's land. This draft was not attached to the report when the jury signed it; to the best of my recollection it was attached the same day. The jury never saw the draft attached to the report, that I know of; the draft was attached by me after the jury were gone.

Cross-examined.—Witness says, I did not make a draft while the jury were there; to the best of my recollection I had the draft of the first report, and the jury went over the road; some of the parties wished them to take part of another route; they went to examine that route; then they told me to run on the same ground of the former jury. I run it according to the courses and distances of the former survey. That draft the jury saw; but the one attached to the report I copied from it, and the jury did not see it.

Re-examined.—Witness says, the draft that the jury saw was not the draft attached to the first report, but was a copy of it. Generally, when I make a draft I keep the first draft, which was the one I had; the courses and distances, and everything are carefully noted on it. I then make a copy of it, and attach it to the report. The draft I retain is a rough draft. To the best of my recollection the rough draft shown the jury was like the draft attached to this report in every respect. It had the improvements marked on. The report was signed some time in the afternoon;

T 2

[New Hanover Road.]

to the best of my recollection the draft was attached by me on the evening of the same day.

In the 52d section of the Act of 13th June, 1836, relating to roads, it is provided that "No view which may be had for any of the purposes aforesaid, shall be good and valid, unless *five* of the persons appointed for the purpose shall view the place in question; nor unless *four* of the actual viewers concur in the report."

January 7, 1852, the exceptions were overruled, and the report of re-reviewers confirmed finally, and road ordered to be opened of the width of 33 feet, by the Court.

It was assigned for error: 1. The Court erred in overruling the exceptions filed September 30, 1851. 2. The Court erred in confirming the report of the re-reviewers.

*Thomas*, for the exceptor.—1. The improvements are not all noted in the draft or report. The improvements must be noted; Act of Assembly, 13th June, 1836, sec. 3; 13 *Ser. & R.* 445.

2. The jury should have stated in their report which of them were present at the re-review. They are required *particularly* to do this. It appears by the report that John Steiner, one of the jurors appointed by the Court, did not sign the report; but there is nothing on the face of the report that shows that he was not there. He may have been there but declined signing the report. They should have stated in the report particularly whether he was there or not. Act of Assembly (Roads), 13th June, 1836, sec. 3; Road in Middle Creek, 9 *Barr* 69, 70.

3. The draft was attached after the jury had separated; they never saw it. The first draft *was not like the one attached to the last report.* There are matters noted on the first draft that are not on the last. The houses of Francis Weand and Amos Knouse are noted on the first draft and not on the last, and the Reformed church is noted on the first and not on the last. Neither do the courses and distances on the two drafts correspond. On the first draft the distance of a certain course along and through the land of Geo. Richards is said to be 105 perches and five-tenths, while on the last the same course appears to be 111 perches and five-tenths. A certain course on the first draft purports to be S. 42¾ degrees, &c., and on the last the same course appears to be S. 42 degrees, &c.

But whether the two drafts were alike or not makes no difference. The draft is a material part of the report. In most cases the improvements and the nature of the land, whether arable or woodland, and the streams and meadows, are noted on the draft. They are all more conveniently described in a draft than in the report. The jury never saw the draft. They gave the surveyor no authority to attach it, and hence the report should have been set aside, and not affirmed by the Court of Quarter Sessions.

[New Hanover Road.]

*Fornance*, contrà.—There are two questions submitted to this Court by the appellants.—1. Where five of six viewers report they were present, were sworn, and that they viewed and laid out a road; *are they also required to report that the sixth viewer was not present?*

That the sixth viewer in this case was not present, was manifest to the Court below; and the only question here is, whether the viewers are bound to state in the report, *who were not present:* this is not required by the Act of Assembly, nor the case of Road in Middle Creek, 9 *Barr* 69, referred to by appellants.

2. The second question submitted to this Court is, whether the scrivener and surveyor may, after a report has been signed, attach a draft carefully copied, as shown by their own witness, in lieu of the draft used by the viewers.

The surveyor having been previously called upon, came upon the ground with a rough draft copied from the former report. The former report and draft attached varied; but the rough draft copied by the surveyor, appears, by the evidence, to be a correct plot or draft of the last survey and road reported; and this rough draft, so corrected, was laid before the viewers after they had viewed and agreed to follow the route of the former view. They approved of it, made their report of a road agreeing with the draft, signed the report, and left the report and draft in the hands of the surveyor to forward to the Court. And the point for this Court to decide is, *whether the draft must be attached to the report before it is signed, or whether a correct copy of draft may be annexed and returned after the signing.*

Here there is no complaint of the acts of the viewers, nor is there any evidence that the draft is not correct; but on the contrary, the witness said the draft was a correct one.

Where there is an imperfect, illegal, or improper draft attached to a report, the practice in the Sessions of Montgomery county, has been to send the report back to viewers for correction. This practice was suggested and sanctioned by the Supreme Court in the case of Towamencin Road, 10 *Barr* 195, and Potts's Appeal, 3 *Harris* 416, as well as other cases decided by this Court.

In the present case there was nothing to induce the Court below to send the report back for correction.

There was nothing to correct; and if it were sent back, it could be for no other purpose than to compel the viewers to attach or annex the draft themselves.

The opinion of the Court was delivered, April 12, by

BLACK, C. J.—The first exception here is, that the report signed by five viewers does not state that the sixth one was absent. If this had been material, the exception ought to have been accompanied with proof. We take it for granted that every objection made to

[New Hanover Road.]

a road report and overruled by the Quarter Sessions, and which is in its nature capable of being proved, is untrue in point of fact, unless the contrary appears from the record, or by evidence *aliunde* regularly submitted to the Court below previous to their decision. The presumption in this Court is that all things are right. But this exception is something worse than an unproved one. If it had been sustained by evidence, it was right to disregard it, for it made no manner of difference whether the sixth viewer was absent, or whether being present he refused to sign. The report was good either way.

Another exception is that the plot or draft of the road was not attached by the viewers themselves, but by some one else after they had signed the report. There is nothing in this. The draft may be appended by any person whom the viewers authorize to do so. The courses and distances are given in the report, and if the draft varies from them it can easily be corrected. If there should be a serious omission in it, the universal and proper practice is to recommit it to the viewers for such alterations as will make it perfect. The reason why it was not referred back in the present case, was (as we are bound to believe), that the Court knew it to be right as it stood.

Order affirmed.