## PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* INDIANAPOLIS, COLUMBUS & SOUTHERN TRACTION COMPANY.

[No. 20,808. Filed May 28, 1907. Rehearing denied January 8, 1908.]

1. STATUTES.—*"Practicable."*—*Railroads.*—*Interurban Railroads.*—*Crossings.*—The word "practicable," as used in §5670 Burns 1908, Acts 1903, p. 125, providing that if any street, interurban or suburban railroad company and a railroad company shall fail to agree upon a change of an existing crossing, the court may order the change thereof to one above or below grade if it shall decide it to be "practicable" to abolish the grade crossing, when construed with §5227 Burns 1908, Acts 1897, p. 237, §1, giving courts the power to prevent a crossing at grade where "reasonable and practicable," and with §5533 Burns 1908, Acts 1907, p. 454, §3, giving the Railroad Commission power to supervise crossings, implies the court's exercise of a legal discretion—the exercise of a sound judgment under all of the circumstances, considering the matter from the viewpoint of a prudent and cautious person. p. 636.

NOVEMBER TERM, 1907.    635

Pittsburgh, etc., R. Co. *v.* Indianapolis, etc., Traction Co.—169 Ind. 634.

2.  APPEAL. — *Weighing  Evidence. — Interurban  Railroads. — Rail-
roads.—Crossings.*—The trial court's decision against the prac-
ticability of changing from grade an interurban and railroad
crossing will not be disturbed, where the evidence—which was
oral—shows that the change would probably cost $34,483; that
derailing devices were in use, preventing collisions; that the inter-
urban company runs 44 cars daily over the crossing, and the rail-
road company, twenty trains daily, and that no accident has ever
happened at such crossing.  p. 638.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Petition by the Pittsburgh, Cincinnati, Chicago & St.
Louis Railway Company against the Indianapolis, Columbus
& Southern Traction Company.  From a judgment for de-
fendant, petitioner appeals.  *Affirmed.*

*Samuel O. Pickens* and *L. J. Hackney,* for appellant.
*Charles S. Baker* and *William Ward Cook,* for appellee.

HADLEY, C. J.—Appellant and its predecessors have owned
and operated a railway between Indianapolis and Louisville
for many years.  Appellee, a corporation organized for the
construction and operation of an interurban railroad be-
tween Indianapolis and Columbus under the general railroad
law, pursuant to an agreement with appellant, constructed
a grade crossing over appellant's road, outside, but near
the city limits, of Indianapolis.  This action is prosecuted
under section five of an act approved March 3, 1903 (Acts
1903, p. 125, §5670 Burns 1908) to change the existing grade
crossing to one below or above grade.  The defendant an-
swered the general denial.  There was a trial by the court,
a general finding, and judgment for the defendant.  The
only assignment of error is the overruling of appellant's
motion for a new trial which was based upon the grounds
that the finding was not sustained by sufficient evidence,
and was contrary to law.

Section 5670, *supra,* provides that if any street railroad,
interurban or suburban railroad, and a railroad company
shall fail to agree to a change of any existing grade crossing,

to a crossing above or below grade,· either company may, by petition, carry the subject to a circuit or superior court, and "if the court shall find that it is practicable to abolish the grade crossing and change the same to a crossing below or above grade, it shall adjudge and decree that such crossing be changed to one below or above grade, as it shall find best," how it shall be constructed, the part each company shall perform, the share of the cost each company shall bear, the amount of the cost each shall pay to the other, and apportion the cost of maintenance, etc.

Under this statute the first and controlling question for the trial court to determine was whether it was practicable to change the grade crossing to one below or above grade. If determined in the negative, there was nothing else to decide; if in the affirmative, then followed the dependent duties pointed out by the statute.

It may be further stated that the only question presented by this appeal is whether the court's finding as to the practicability of the change was sustained by sufficient evidence. The words of the statute are: "If the court shall find that it is practicable," etc. The legislative meaning of the word "practicable" presents a subject of earnest debate between the parties. Appellant, calling attention to the act of 1897 (Acts 1897, p. 237, §1, §5227 Burns 1908), which provides that, if railroad companies cannot agree on the manner of a crossing, the circuit court shall, by decree, define the manner, "and if in the judgment of such court it is reasonable and practicable to avoid a grade crossing, it shall by its process prevent a crossing at grade," contends that construing the act of 1897, *supra,* with the act of 1903, *supra,* which requires the court to abolish such crossing if found practicable, we must accept this legislation as indicating the fixed policy of the State to do away with railroad crossings at grade, as soon as it can be reasonably accomplished. From this it is argued that the term practicable, as employed in the statute, should be taken in the sense of

physically practicable; or in the sense of an engineering problem.

The construction insisted upon, we think, is too narrow. Conceding, without deciding, that it is the legislative purpose to encourage, and ultimately to eliminate ordinary grade crossings, still we think that it was intended that the object shall be effected in such a reasonable and conservative manner as will not prove unduly oppressive to the railroad companies, nor be in disregard of the rights and interests of the public. This view is strengthened by the amendatory act (Acts 1907, p. 454, §3, §5533 Burns 1908) which gives to the railroad commission power to supervise such crossings, and "to prescribe the terms and conditions and manner in which such crossings shall be made; and the character thereof, whether at grade or over or under grade." The word practicable, as used in the statute, we think should be given its usual and ordinary meaning as indicated by its context. Plainly it is not synonymous with "possible." A thing practicable must necessarily be possible, but a thing may be possible that is not practicable. It cannot refer to apparent difficulties and cost alone, or the words "finds practicable" become an idle phrase, for under modern engineering skill there is hardly anything incapable of accomplishment at some cost. It should not be held to relate solely to the removal of perils from persons carried by the cars, for the work might be so difficult and expensive as to amount to confiscation. The English Law Dictionary defines the word "as possible of reasonable performance."

The phrase "if the court shall find it practicable" implies a legal discretion, the exercise of judgment based upon the whole evidence of all the facts that affect the question of practicability within the usual and ordinary sense of the word. The question therefore depends upon the circumstances of each particular case. These circumstances may be many and varied. Among them, the difficulties to be overcome in changing from a grade to a crossing above or

below grade; the cost, whether reasonable or extraordinary; the extent of public travel; the frequency of trains and cars; the character of the country, whether level or hilly; whether the employes of one company may see the cars of the other company far enough away to put their own under control before reaching the crossing; to what extent, if at all, dangers to persons being conveyed by the cars will be eliminated; whether the dangers from ascending and descending the long gradients, made necessary by the elevation or depression of the track of the crossing company, will be greater or less than the dangers from collision encountered at the grade crossing; the availability and efficiency of well-known devices for the avoidance of collisions at grade; and such other surrounding conditions as naturally and reasonably address themselves to the judgment of prudent and. cautious persons. *Baltimore, etc., Co.'s Appeal* (1881), 3 Am. and Eng. R. Cas., 242; *Wooters* v. *International, etc., R. Co.* (1881), 54 Tex. 294, 300.

The evidence discloses that the country at the point of crossing is substantially level and open for some distance. The railroad company runs five passenger-trains and five freight-trains over the crossing daily, each way. The interurban company runs over the crossing daily, a total of thirty-eight passenger-cars, and six freight-cars. Appellant's witness estimates the cost of an over-grade crossing at $34,483. No accident has ever happened or been threatened at the crossing, and the original contract between appellant and appellee for the grade crossing contains a stipulation that appellee shall, at its expense, install and forever maintain in its track at the crossing a derailing device so constructed that a car approaching the crossing will be certain of derailment, unless stopped, and the switch moved on the opposite side of the railroad track.

The expert civil engineers, eight in number, testified that an over- or under-grade crossing was practicable, but they

disagreed as to which it should be, some speaking for an over-grade and some for an under-grade crossing, and all manifestly testifying from a purely engineering point of view. In fact, the evidence is without conflict that the change from a grade to an over- or under-grade crossing may be successfully accomplished at some cost. This state of the evidence, however, is not decisive of the case, as appellant contends that it should be. It may be conceded that an elevation of the track is possible without an extraordinary cost for a level surface, but this is but a single element of the ultimate fact, and falls far short of establishing its practicability under the broader meaning of the statute. The body of the evidence, comprising some four hundred pages of the record, and almost wholly oral, is by no means free from conflict on the main question. The trial judge personally inspected the premises before announcing his decision and we are unable to say that his conclusion was not supported by sufficient evidence. There are constitutional and other important questions discussed in the brief that we cannot consider because not presented by the record.

Judgment affirmed.