Jeannette Glass Company, Appellant, *v.* Indemnity Insurance Company of North America.

Argued March 26, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Fred B. Trescher,* with him *Kunkle & Trescher* and *Francis S. McMichael,* for appellant.

*R. E. Best,* with him *Smith, Best & Horn,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, April 22, 1952:

Under the notice provision of an insurance policy covering liability for personal injuries, must notice be given promptly after an accident or, is the provision satisfied by the giving of notice only after the insured has learned of its potential liability by having suit filed against it eight months later? The learned court below held in this case that notice was required promptly after the accident and directed a verdict for defendant, Indemnity Insurance Company of North America. Judgment was entered on that verdict and the insured, The Jeannette Glass Company, plaintiff, has appealed.

On May 24, 1944, defendant issued to plaintiff a contract of insurance covering liability for personal injuries and property damage for a period of three years. That policy provided: "Upon the occurrence of an accident, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable after notice thereof has been received by its executive officers at the insured's headquarters." It is that clause out of which this dispute arises.

While the policy was in force plaintiff, through Eichleay Engineering Company, began constructing some large tanks in its factory. On November 26, 1945, in the course of that construction work a steel beam fell and injured one Stucker, an employe of Eichleay. Carl T. Sloan, vice president of plaintiff, learned of the accident and arrived at the scene just as Stucker was being placed in an ambulance. He and two of plaintiff's employes immediately conducted investigations which satisfied them that plaintiff was not liable. Two or three days later, Kirkland W. Todd, president of plaintiff, learned of the accident and after a summary investigation reached the same conclusion. Plaintiff did nothing to notify defendant of the accident until August 10, 1946, when a complaint in trespass, filed by Stucker, was served on it. Defendant denied liability on its policy because of plaintiff's failure to give prompt notice. Stucker eventually recovered a verdict against plaintiff in the sum of $7000.00 which plaintiff settled in full by paying to Stucker $4000.00. To recover that sum plus the costs of defending that suit, plaintiff brought this action in assumpsit.

The rule is well established that notice must be given to the insurer within a reasonable time and what constitutes a reasonable time necessarily depends on the facts and circumstances of each case: *Unverzagt*

*v. Prestera,* 339 Pa. 141, 13 A. 2d 46; *Curran v. Nat'l. L. Ins. Co., U. S. of A.,* 251 Pa. 420, 96 A. 1041; *Hughes ·v. Central Acc. Ins. Co.,* 222 Pa. 462, 71 A. 923. It is equally clear that in the absence of extenuating circumstances eight and one-half months is an unreasonable delay in giving notice. See: *Unverzagt c. Prestera,* supra (3½ months); *Bartels. B. Co. v. Employers' I. Co.,* 251 Pa. 63, 95 A. 919 (6 months); *Gerber v. Fletcher,* 108 Pa. Superior Ct. 226, 164 A. 135 (7 months).

Plaintiff contends that its employes and officers conducted a prompt investigation and from that determined that it was not liable. It concludes that since it acted with due diligence in making its investigation and reaching its conclusion there ·was no necessity for giving immediate notice to defendant. That argument ·ignores both the language and the purpose of the notice clause in the contract.

That clause states: *"Upon the occurrence of an accident,* written notice shall be given . . ." (Italics added.) It is admitted that an accident occurred in which Stucker was seriously injured and that it was the type of accident covered by the policy. Also, plaintiff's vice-president knew of the accident immediately after it occurred and the president not more than two or three days later. Under those circumstances it was incumbent upon plaintiff to give notice as soon as possible after its executive officers learned of the accident. Thus, there can be no excuse for the delay of eight and one-half months in notifying defendant.

The fact that plaintiff investigated the accident and determined it was not liable does not justify this failure. Rather, in view of the verdict for Stucker, it emphasizes the reason this failure releases defendant from liability. As we said in *Bartels B. Co. v. Employers' I. Co.,* supra, at p. 66, the notice clause is "de-

signed to enable the insurer to investigate the circumstances of the accident while the matter is yet fresh in the minds of all, and to make timely defense against any claim filed." It might well be that had defendant been notified promptly its investigation by men trained in that work would have revealed a defense to that action. It is equally possible that defendant could have obtained a more favorable settlement had it learned of the accident immediately. It is for these reasons that the failure to give notice releases the insurer from the obligation of the contract: *Unverzagt v. Prestera,* supra. And this is true even though the insurer does not show that he was in fact prejudiced: *ibid.*

A case very similar to this one on that point is *Ross v. Mayfl'er D. Stores, Inc.,* 338 Pa. 211, 12 A. 2d 569. There the insured notified the wrong company. That company conducted an investigation before it learned of the error. The proper company was not notified until one year later at which time all investigation reports were turned over to it. We stated, at p. 215: ". . . the St. Paul Company may well have suffered a disadvantage in not having the opportunity to make its own inquiries, and, more especially, in being deprived for an entire year of the opportunity to settle the claim before the prosecution of the suit had increased the difficulties of adjustment."

Appellant cites that case for the proposition that the issue here should have been left for the jury to decide. It is true that there it was left to the jury but we said, at p. 214: "Ordinarily, in the absence of special circumstances, the question whether an insured has failed to meet the requirements of the policy in regard to the time of giving the notice stipulated therein is one for the court; at least the delay may be great enough to justify the court in so ruling as a matter of law . . .

[citing cases] Here, however, the question was submitted to the jury, which concluded that a delay of a year and two days was not 'prompt' notification. This finding was clearly proper, for notifying the wrong company was not a sufficient *legal* excuse for failure to comply with the terms of the policy on which recovery was sought." (Italics added.) Likewise, in the instant case, the failure to give notice because plaintiff thought it was not liable is not a sufficient legal excuse.

All of the cases cited by appellant are cases where some essential *fact* was unknown to the insured.[1] In those cases the question was properly left to the jury as to whether the insured exercised due diligence to ascertain the facts and whether in view of their ignorance they had given notice within a reasonable time. Here, on the other hand, all of the facts were known to plaintiff and it was only because plaintiff reached the *legal conclusion* that it was not liable, that notice was not given. There being no dispute as to the facts, the sufficiency of that excuse was purely a question of law which was properly decided by the learned court below.

In support of its contention, plaintiff offered in evidence the testimony from the trespass action in an effort to show that Stucker's claim was fraudulent and that plaintiff was, therefore justified in not giving notice to defendant. Upon timely objection this offer

---

[1] *Curran v. Natl. L. Ins. Co., U. S. of A.*, supra (policy was lost and beneficiary did not know name of insurer) ; *Hughes v. Central Acc. Ins. Co.*, supra ; *Peoples M. Accident Ass'n. v. Smith*, 126 Pa. 317, 17 A. 605 ; *Schambelan v. Preferred A. Ins. Co.*, 62 Pa. Superior Ct. 445 (All cases where insured had no immediate knowledge of injuries) ; *Public Coal Co. v. Continental Cas. Co.*, 138 Pa. Superior Ct. 480, 10 A. 2d 860 (No knowledge by executive officers that accident occurred.)

was rejected by the trial judge. That ruling was clearly correct. A properly constituted court and jury found that Stucker had a valid claim and the verdict in that suit is not open to collateral attack in this proceeding. See *Moeller v. Washington County,* 352 Pa. 640, 44 A. 2d 252; *Greiner v. Brubaker,* 151 Pa. Superior Ct. 515, 30 A. 2d 621.

Plaintiff had no legal justification for its failure to give prompt notice of the accident and for that reason defendant was released from liability on its policy.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I would reverse the lower court and grant a new trial. *Lex neminem cogit ad vana seu inutilia peragenda.*

When the plaintiff in this case, the Jeannette Glass Company, conducted its investigation and concluded that it, (and, therefore, also the Indemnity Insurance Company of North America,) was not involved in any way by the accident on November 25, 1945, it would have done an utterly vain and useless thing to notify the insurance company thereof. The accident on its premises which concerned two different parties entirely, namely, Sylvester Stucker and the Eichleay Engineering Company, had no more business being reported to the insurance company than a fist fight between two strangers on the Jeannette Glass Company premises.

The principle involved here is excellently summarized in 15 Corpus Juris Secundum, sec. 14, page 629, as follows: ". . . the law will not require the doing of a useless or unreasonable act; technicalities are not favorites of the law, except where they can be used as instruments to prevent injustice; a party seeking to avail himself of a technicality not affecting a substan-

tial right must himself be held to a prompt, consistent, and exact assertion of such technical right." (15 C.J.S., sec. 14, p. 629)

Every legal wrong encompasses in some form or another a moral wrong, but there was nothing ethically blameworthy in the decision of the Jeannette Glass Company not to inform the insurance company of the accident which was extraneous to the interests of either. The fact that the plaintiff conducted an investigation demonstrated its bona fides. It was not attempting to conceal anything or to evade responsibility. It sought, and believed it had apprehended, the truth. It carried liability insurance, so that it cannot be charged or even suspected that it was attempting to circumvent any obligation, financial or otherwise. It refrained from contacting the insurance company because, in its honest opinion, it was perfectly superfluous to do so.

In assumpsit actions we usually find the defendant proceeding on the theory that had the plaintiff done what the defendant expected of him, the defendant would either not have suffered a loss or he would have gained an advantage now denied him. But in the case at bar the defendant lost nothing because of the failure of the plaintiff to notify it of the accident on or about the day it occurred, nor could it have gained anything by possession of that knowledge on or about November 25, 1945. A decision in favor of the insurance company here is a decision based on what the lay world usually denominates, and decries, as a "technicality".

However, it is to be observed that in insisting on a strict and meticulous adherence to the letter of the policy, the insurance company is wielding a sword which cuts two ways. Even if we take the policy word for word, as the defendant demands, we will find that the plaintiff *did* meet the requirements of the contract.

The crucial clause reads: "Upon the occurrence of an accident, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable after notice thereof has been received by its executive officers at the insured's headquarters." It will be noted that the clause does not say that notice shall be given *immediately* or *as soon as possible*. It says as soon as *practicable*. Practicable, of course, means feasible. It means the accomplishing of something which is reasonable to accomplish, and it excludes the doing of what is unreasonable or unnecessary. If I order the baker to deliver a loaf of bread when practicable I certainly do not expect him to deliver it before it is baked. "The adjective 'practicable' imports difference according to circumstances. Assuming that the law requires action at the earliest practicable moment, it would still be a question of fact, at least generally, when that moment arrived, even if there was no dispute as to the circumstances. Some may point one way and some the other. No case is cited where it was held to be a matter of law for the court." (*Norton v. Gleason,* 18 A. 45, 47; 61 Vt. 474.)

This principle was well stated also in an Indiana case: "A thing practicable must necessarily be possible, but a thing may be possible that is not practicable. . . . The English Law Dictionary defines the word 'as possible of reasonable performance.' The phrase 'if the court shall find it practicable' implies a legal discretion, the exercise of judgment based upon the whole evidence of all the facts that affect the question of practicability within the usual and ordinary sense of the word. The question, therefore, depends upon the circumstances of each particular case." (*Pgh. C. C. & St. L. Ry. Co. v. Indianapolis C. & S. Traction Co.,* 81 N. E. 487, 488, 169 Ind. 634.)

Further pursuing the meticulous literalness of the clause in question, it is to be observed that although the

evidence indicates that *one* of the executive officers of the Jeannette Glass Company learned of the accident on the day it occurred, the policy says that the insurance company does not need to be notified until notice of the accident has been received by the executive *officers* of the insured firm, that is, *all* of them. And that notice must be received at the insured's *headquarters*. The executive *officers* did not receive notice of the accident at their *headquarters* until August 10, 1946, and that is when they notified the defendant insurance company.

But this is merely fencing with shadows and juggling with language. As much as the lay world may assume that law consists of a game in the abracadabra of words, and as much as that assumption may have been true in Shakespearean days, it is reassuring to note that the law of today aims at realities and the achievement of a justice which will appeal to the reason of the most unlettered man on the street. Law is simply justice in action.

Where there is a dispute over words and not intent, phrases and not purpose, the insured, within the limits of reasonableness, must be favored. Mr. Justice STERN expressed it succinctly in the case of *Snader v. London & Lancashire Indemnity Co.,* 360 Pa. 548, 551, 62 A. 2d 835, when he said: "It must, of course, be remembered that where the terms of a policy are susceptible of different interpretations the construction most favorable to the insured should be the one adopted . . . The reason for this is that the language of the policy is prepared by the insurer, presumably with the purpose in mind of protecting itself against future claims in regard to which it does not desire to accept liability."

The Jeannette Glass Company sought no advantage by failing to communicate with the insurance company on November 25, 1945. The insurance company lost no

advantage in its ignorance of the accident at that time. The only interest the insurance company could have had in receiving notification of an accident was to investigate and prepare against a possible law suit. The mere notification of itself added nothing to its coffers, nor did the absence of notice take a penny out of its treasury when the possibility of a claim against it was excluded.

The Indemnity Insurance Company of North America could not be concerned about the accident of November 25, 1945 until it became a potential lawsuit; and that did not occur until August 10, 1946, when of course the provisions of the policy were complied with.

The case of *Unverzagt v. Prestera*, 339 Pa. 141, 13 A. 2d 46, on which the appellee principally relies, points out that what constitutes compliance with any certain condition in an insurance policy "varies with the circumstances of each case." It also states that when "there are no extenuating circumstances for a jury's consideration, the question is one for the court." But there *were* extenuating circumstances in this case. And extenuation is always a question of fact because it involves not only brute circumstances, physical realities and personal conduct but also the inferences which flow from that interplay of the human elements.

The expression *common sense* is one much abused in everyday parlance, but it is still the mountain peak of reason which projects above the ever-rising flood of legal formulae, complicated terminology, dicta, syllabi, clauses and phrases pouring from the reservoirs of formal law. And common sense, as I view it, says that the insurance company received adequate and sufficiently expeditious notice for it to protect its interests and prepare to meet its obligations. The record is devoid of one syllable showing that it suffered the slightest handicap by receiving the notice on August

10, 1946, instead of November 25, 1945. When it evaded the arena of the law suit brought against the Jeannette Glass Company it did so wilfully and not because it was not armed for the contest.

To allow an indemnity insurance company to escape responsibility for the very thing it bound itself to anticipate is to lay down a precedent of perilous potentialities. Carrying it into its ultimate ramifications it could endanger faith in what is undoubtedly one of the strongest pillars in the temple of the American way of life, namely, the insurance policy.

Next to the daily rising of the sun, nothing is so warming and comforting to the American family as the realization of every member thereof that by the periodical payment of stated sums from their hard-earned wages they have engaged the services of a powerful and unfailing friend who will protect them against the rain of sickness, the storm of accident, debility and theft, and the hundreds of other mishaps and contingencies which can darken and ensadden the life of any happy home.

Insurance policies contain much fine print. They are to be read with human understanding and not through the glasses of super-technical interpretation.

I would reverse the lower Court and grant a new trial.