Vernon G. FREY, Plaintiff,

v.

**SECURITY INSURANCE COMPANY OF HARTFORD, Successor by merger to the New Amsterdam Casualty Company, a New York Corporation, Defendant.**

Civ. A. No. 69–645.

United States District Court,
W. D. Pennsylvania.

Sept. 13, 1971.

William L. Jacob Jr., Pittsburgh, Pa., for plaintiff.

William C. Walker, of Dickie, Mc-Camey & Chilcote, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

In this diversity contract case, tried to a jury, judgment was entered on the verdict in favor of the plaintiff, Vernon G. Frey, in the amount of $11,275, with interest from September 11, 1967. The defendant, Security Insurance Company of Hartford, moved for a judgment notwithstanding the verdict, and, in the alternative, for a new trial. It is our opinion that the defendant's motions should be denied.

The defendant, Security Insurance Company of Hartford, the successor by merger to the New Amsterdam Casualty Company, was the plaintiff's liability insurance carrier.

The operative facts in the present case may be stated as follows:

On July 9, 1962, Samuel J. Enos of the Hampton Township Municipal Authority borrowed a backhoe and an operator, Lawrence Claus, from Frey's excavating company to dig a trench so that the main water line, running parrallel to the street, could be connected with a water service line extending under a lot in Richland Township into a house inhabited by the Ulrich family. This work appears to have been performed pursuant to a long-standing informal arrangement between the Authority and Frey and was effectuated by his foreman, William C. Mathews. Frey was not present during the trenching nor did he have personal knowledge thereof.

On December 15, 1962, six and one-half months after the water tap-in was made, the Ulrich home was destroyed by an explosion and certain members of the family were injured. News accounts attributing the cause of the explosion to an accumulation of gas came to the plaintiff's attention.

In February, March or April of 1963, Enos met Frey, fortuitously, and informed him for the first time that his backhoe and operator had been used to dig the trench in the street which was required for the Ulrich water service connection. Enos told Frey that he had observed Claus operating the backhoe; that the Frey machine was at no time on the Ulrich property; that the trenching was performed exclusively in the street; and that the backhoe had not touched or disturbed the main gas line which ran underground parallel to the street and a couple of feet above the water service line which extended from the house to the street.

Enos testified that he believed the backhoe came within six inches of the gas line, but it does not appear that he

told this to Frey. Enos did tell Frey that the Township Authority, on the advice of its solicitor, was not reporting the Ulrich explosion to its insurance company because it was not involved in causing it (Tr. pp. 65, 79–80, 85).

Aware for the first time that his employee had worked in the vicinity of the Ulrich home, Frey summoned Claus and his foreman, Mathews, to discover what they knew about the work Claus had performed. Claus' story substantiated what Enos had already told Frey. Claus informed Frey that all the work had been performed in the street some distance from the Ulrich house. In addition, Claus stated that the water service line under the street and below the main gas line was turned up in front of the gas line, and he could not have operated the backhoe closer than one foot of the gas line without cutting the water line which had not been done. He denied disturbing or touching the gas line.[1]

Sometime after his conversation with Enos, Frey was told that the gas company had removed a section of gas line from the vicinity of the explosion. It does not appear that he was told from what particular place this section of pipe was removed.

Frey testified that he did not report the Ulrich explosion to the defendant company after talking to Enos and Claus because the facts established that he was not involved in causing the explosion in the Ulrich home.

In due course the Ulrich family filed suit against the gas company for personal injuries in the state court at April Term, 1963; and Republic Insurance Company, probably as the Ulrichs' sub-rogee, filed suit for property damage in the state court at October Term, 1963. Eventually there were six defendants in these two cases, i. e.: the gas company, the builder of the house, the plumber who worked on the house, the excavator, and two municipal authorities.[2] The Hampton Township Authority was brought into the case in May, 1963, but it was not until March 6, 1964, that Frey was brought into these actions as an additional defendant. Frey learned of these lawsuits for the first time in March, 1964, when he was served with the suit papers and immediately notified the defendant company.

The defendant, by its attorneys, appeared on behalf of plaintiff, and conducted a preliminary investigation. On or about July 13, 1964, the defendant disclaimed liability, inter alia, for the reason that Frey had failed to report the accident as soon as practicable. Thereupon, Frey employed his own counsel, made a settlement in the sum of $13,333.33, and brought suit against the defendant for this amount, plus costs, legal fees and investigation expenses—a total of $14,633.33. Frey's share of the $10,000 settlement for the property damage was $3,333.33, plus $25.00 costs. The defendant's motion to disallow this amount was granted because property damage caused by explosion was excluded under the terms of the policy.

The total amount recovered by the Ulrich family in the state court by way of settlement for personal injuries was $77,500. Plaintiff's share of the settlement for personal injuries was $10,000, plus $25.00 costs. Thus, it was never legally determined which of the seven de-

1. It appears from Enos' testimony that the water service line, extending from the house under the main gas line, was turned up on the street side of the gas line and terminated "a little higher than the grade of the ground" which was above the level of the street. It also appears that the place where the gas service line to the house was tapped into the main gas line had not been exposed by the trenching for the water line tap-in.

2. The number of defendants brought into the state court suits and the diversity of their functions suggest that the discrete cause of the gas explosion was not certain or that there were numerous contributory causes. The fact that the explosion occurred over six months after the house was built, and the work was done in the street, tended to cloud any causal connection between the work and the explosion.

fendants involved in the Ulrich suits was actually responsible for the gas explosion.

### Motion for Judgment N.O.V.

The defendant's motion for judgment notwithstanding the verdict is based upon two grounds:

> "1. The record shows that Plaintiff failed to report the accident for a period of 11 to 13 months following his knowledge thereof.

> "2. The record shows the Plaintiff investigated the accident to determine whether it should be reported and to determine his legal liability, but thereafter failed to report the accident for an unreasonable length of time."

The defendant contends that Frey "became bound to notify" it when he learned of "the fact that his employee had worked on the residence [sic] involved", and he should not have investigated "to determine whether notification should be made" (defendant's brief, p. 4). However, it is eminently clear that all the plaintiff learned from his investigation was the fact that his employee, Claus, had *dug a trench near the main gas line* at the front of the Ulrich property for the Hampton Township Authority, and that the Authority did not notify its insurance carrier of the explosion. The defendant contends that since Frey's backhoe dug a trench near this gas line, he was required as a matter of law to give written notice of the Ulrich gas explosion, which occurred over six months later, to the defendant in February, March, or April, 1963, when Enos related that fact to him. The defendant contends that the notice Frey gave to it after he was sued in March, 1964, was

too late. Conversely, it could be argued with equal plausibility that from what Frey was told by Enos and Claus, as a matter of law, he was not required to notify the defendant of the subsequent explosion. *Cf.* Ripepi v. American Insurance Companies, 349 F.2d 300 (3d Cir. 1965).

■■ The legal basis for defendant's motion is to be found in clause 10 of the contract of insurance which provides:

> "10. *Notice of Accident* When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. * * *"

"Practicable" means feasible in the circumstances. When a policy of insurance requires that notice be given "as soon as practicable", the law requires that notice be given within a reasonable time after knowledge of an accident, but what is reasonable depends upon the facts and circumstances of each individual case.[3] Where there are extenuating circumstances, it is for the jury to determine whether notice was given as soon as it was feasible and with the exercise of due diligence.[4]

An example of extenuating circumstances is found in Hughes v. Central Accident Ins. Co., 222 Pa. 462, 71 A. 923 (1909), where the obscurity of the association between accident and resulting injury presented a jury question.[5] In that case it was stated at page 924:

> "Where the facts are sufficient to account in some measure for the delay, without reflecting upon the diligence or good faith of the assured, it is for the jury to say whether the delay was

3. Farmers National Bank v. Employers Liability Assur. Corp., 414 Pa. 91, 199 A.2d 272 (1964); Jeannette Glass Co. v. Indemnity Ins. Co., 370 Pa. 409, 88 A.2d 407, (1952); Unverzagt v. Prestera, 339 Pa. 141, 13 A.2d 46, (1940); Curran v. National Life Ins. Co. of U.S., 251 Pa. 420, 96 A. 1041 (1916).

4. Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246, 251 (3d

Cir. 1966); Meierdierck v. Miller, 394 Pa. 484, 147 A.2d 406, 408 (1959); Unverzagt v. Prestera, supra; Hughes v. Central Accident Ins. Co., 222 Pa. 462, 71 A. 923 (1909).

5. For other examples of extenuating circumstances, see Wardle v. Miller, 375 Pa. 565, 101 A.2d 720 (1954); Public Coal Co. v. Continental Casualty Co., 138 Pa.Super. 480, 10 A.2d 860 (1940).

reasonable or not under the circumstances."

In Ripepi v. American Insurance Companies, *supra*, it was held that the duty to report does not arise if the person having the duty has knowledge of the accident and the injury but lacks knowledge of facts which would bring the question of his liability to mind.

■ It thus seems that notice is required to be given only when it comes to the attention of the insured that there has been such an occurrence as would lead an ordinarily prudent and reasonable man to believe that it might give rise to a claim against him for damages. In the instant case, if there were no facts known to Frey which obligated him to make a judgment concerning his liability to the Ulrichs, notice was not required until he was sued in March, 1964.

■ It was our opinion at trial that extenuating facts and circumstances were disclosed in the evidence concerning which reasonable men could differ upon the issue of whether or not the plaintiff had notified the defendant insurer as soon as practicable, and thus that issue was for the jury. It seemed to us that the inquiry was: When did Frey first have reason to believe that the Ulrich explosion in December, 1962, might have been causally connected to the operation of his backhoe in July, 1962? The answer to this question would largely determine whether the notice to the insurer was unreasonably delayed. Like all other questions of fact, it was for the jury to determine under proper instructions. See cases cited in footnote 4, *supra*.

The defendant relies on Jeannette Glass Co. v. Indemnity Ins. Co., 370 Pa. 409, 88 A.2d 407 (1952); Hachmeister, Inc. v. Employers Mutual Liability Insurance Co., 403 Pa. 430, 169 A.2d 769 (1961); Housing Authority v. Employers' Liability Assur. Corp., 232 F.2d 932 (3d Cir. 1956). These cases are distinguishable for the reason that all involved an accident which happened on the property of the insured, the details of which were almost immediately known to the insured's executive officers who, after prompt investigation, made a judgment that the insured was not liable and that notice to the insurer was unnecessary.

In Farmers Nat. Bank v. Employers Liability Assur. Corp., 414 Pa. 91, 199 A.2d 272 (1964), also cited by defendant, the plaintiff was injured by the negligence of the insured but notice was not given to the insurer for eight months. No unusual circumstances were shown to excuse the delay.

In the case at hand, if the plaintiff, after investigation, had been given to understand that his backhoe might have been a contributing cause of the subsequent explosion, it would have been his contractual obligation to have notified the defendant, his insurer. But it is impossible to derive any such fact from the evidence with that certainty with which it must appear before the court could accept it as an undisputed fact entitling the defendant to judgment as a matter of law.

In *Ripepi, supra*, the insured there, as Frey here, knew nothing that would indicate that the cause of the accident was causally connected with his property, and gave no notice to his insurer until 17 months later when he was sued. It was held that notice was given as soon as practicable. Circuit Judge Staley stated (349 F.2d p. 302):

"It would be an unusual man who would regard himself as bound to report an accident he had observed or heard about unless there was about it something which might render him liable."

The insured there, as Frey here, "obviously made no judgment relating to his liability because there were no facts known to him which would bring such a question to his mind." With this conclusion the jury in the case sub judice agreed.

*Motion for New Trial*

Defendant's motion for a new trial assigns two reasons in support thereof:

"1. The charge of the Court was fundamentally erroneous and did not submit proper issues to the jury.

"2. The court erred in admitting evidence concerning the reporting of the accident to other insurance companies by other persons." [6]

No exceptions were taken to the charge, Rule 51, Fed.R.Civ.P., the defendant relying on fundamental error. Other than the alleged error in submitting the case to the jury instead of granting defendant's motion for a directed verdict, we can perceive no fundamental error nor has any been pointed out.

As to the second reason: Enos testified that he had talked to "our Board and our Solicitor" prior to his discussions with Frey. When asked whether he reported the accident to his carrier, he replied that he had not "at that time". The defendant objected that this answer was irrelevant, incompetent and immaterial. The objection was overruled (Tr., pp. 21–22). Subsequently, Frey testified that he and Enos had discussed the Township's involvement in the matter, and was told by Enos that he was advised by the Solicitor, Mr. Auld, not to report it "because we had not touched anything" (Tr., p. 65).

On cross-examination, Frey was asked what Enos had told him "specifically". Frey testified: "I asked him what they were doing, were they reporting it, and he said 'definitely no.' They were told by their Solicitor they didn't have to, they weren't involved." (Tr., pp. 79–80.) "Well, after asking Mr. Enos if he was reporting it and what they were doing about it, and they were advised by their attorney not to, I assumed we were safe by what we were doing." (Tr., p. 85.)

It was established by Mr. Hilner, attorney for the Traveler's Insurance Company, the insurance carrier for The Hampton Township Authority, that it was not notified by the Authority of the accident until May, 1963, after the Authority had been joined in the suit by the Peoples Natural Gas Company (Tr., p. 101).

We think what Enos told Frey was certainly relevant, and the testimony of Enos that he had not reported the incident to the Authority's insurance carrier was corroborative of the fact that his declarations to Frey were probably made. Even if objectionable, it was harmless in the light of Attorney Hilner's testimony to which defendant did not object.

An appropriate order will be entered.

---

6. Other than Travelers Insurance Company, no other insurance companies were mentioned at trial "concerning the reporting of the accident".