543 A.2d 134

**Richard P. DRIVER and Sara M. Driver, his wife, and Samuel D. Harris and Margaret E. Harris, his wife, Appellees,**

v.

**Earl J. TEMPLE and Edna Temple, his wife, and Walter H. Heffner and Mary H. Heffner, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 17, 1988.

Filed May 23, 1988.

Michael R. Lynn, Bloomsburg, for appellants.

J. Howard Langdon, Muncy, for appellees.

Before BROSKY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA, KELLY, POPOVICH and JOHNSON, JJ.

WIEAND, Judge:

This appeal by Earl Temple and by Walter and Mary Heffner, husband and wife, is from an order confirming finally the report of a board of viewers which established a private road across their lands for the purpose of giving appellees, Richard and Sara Driver, husband and wife, and Samuel and Margaret Harris, husband and wife, access to

their adjoining properties. Although appellants concede that appellees' lands are "landlocked," they contend that the board of viewers abused its discretion by refusing to establish the roadway along the shortest available route. Before considering this issue, we must determine whether the order of the trial court is subject to appellate review prior to a determination of the damages to be paid to appellants for the land taken from them for appellees' road.

Proceedings for the opening of private roads are authorized by the Act of June 13, 1836, P.L. 551, as amended. Section 11 thereof (36 P.S. § 2731) provides in pertinent part as follows:

> The several courts of quarter sessions shall, ... upon petition of one or more persons ... for a road from their respective lands or leaseholds to a highway or place of necessary public resort ... direct a view to be had of the place where such road is requested, and a report thereof to be made....

Section 1 (36 P.S. § 1781) specifically authorizes the court to appoint a board of viewers, whose duties are defined in section 2 (36 P.S. § 1785) as follows:

> The persons appointed as aforesaid shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of the petitioners.

Section 12 (36 P.S. § 2732) provides that if it shall appear by the report of viewers to the court that such a road is necessary, "... the proceedings in such case[ ] shall be entered on the record, as before directed, and, thenceforth such road shall be deemed and taken to be a lawful private road." Thereafter, according to section 16 (36 P.S. § 2736),

> [t]he damages sustained by the owners of the land through which any private road may pass shall be estimated in the manner provided in the case of a public road, and shall be paid by the persons ... at whose request the

road was granted or laid out: Provided, That no such road shall be opened before the damages shall be fully paid.

■ Proceedings to open private roads and subsequent proceedings to assess damages therefor are distinct proceedings. The commencement of proceedings for the assessment of damages, it has been held, is a waiver of defects in the order confirming the opening of the private road. *Weaver's Road*, 45 Pa. 405 (1863). Because of the bifurcated course which the two proceedings must take, the trial court is required to determine all legal issues involved in the proceeding to take another's land for private use before the damages to be paid can be assessed. Only after it has been decreed that a private road is necessary and is to be opened across the land of another, and the location, width, and distance thereof have been determined, does it become possible to estimate damages "in the manner provided in the case of a public road."[1] Of necessity, therefore, the two proceedings are separate and distinct.

■ This statutory procedure is still in effect. It has not been altered by constitutional amendment, by statute, or by procedural rule. In recognition of the bifurcated nature of such proceedings, this Court has entertained an appeal from an order confirming finally a viewers' report determining that a road shall be laid out and fixing the location thereof. See: *In re Private Road in Monroeville Borough, Appeal of Marinclin*, 204 Pa.Super. 552, 205 A.2d 885 (1964). The Commonwealth Court has similarly entertained such an appeal. *Mattei v. Huray*, 54 Pa.Commw. 561, 422 A.2d 899 (1980). This practice appears to be sound. For an appellate court to refuse to entertain such an appeal and require proceedings to assess damages to go ahead before the

1. This is vividly illustrated by the facts of the instant case. Three separate routes have been proposed. Locations and lengths, as well as terrain, the area subsumed, and the type of land crossed, are different. Thus, damages will vary according to the final route selected. Realistically, therefore, proceedings to determine the amount of appellants' damages cannot begin until the precise location of the roadway across their lands has been finally determined.

location of the roadway has been determined finally would permit absurd consequences in the event the location of the road were subsequently altered following appellate review. We conclude, therefore, that an order finally confirming the opening of a private road is an order which is sufficiently final to permit immediate appellate review.

The contrary holding of a panel majority in *Beers v. Raub*, 363 Pa.Super. 521, 526 A.2d 801 (1987), is disapproved and expressly overruled. The practice adhered to and followed in cases of this type for many years has not been altered by the elimination of courts of quarter sessions or by the establishment of a unified judicial system. The Act of 1836 and the practice thereunder remain extant.[2] Cf. Eminent Domain Code of June 22, 1964, P.L. 84, § 517, 26 P.S. § 1–517 (decree confirming report of viewers after it has been determined finally shall constitute final order).

■ The Act of 1836, *supra*, grants to boards of view broad authority to determine whether a private road is necessary and, if so, where it shall be located. Although the board's findings are subject to review and may be set aside, its authority will not be infringed upon by a court's substituting its judgment for that of the viewers. *In re Private Road in Monroeville Borough, Appeal of Marin-*

2. The author of the dissenting opinion would adopt the reasoning in *Beers v. Raub* that "since, under the new procedures, the same court which confirms the viewers' report also conducts the trial on damages, the need for piecemeal review of private road cases ha[s] been removed." Dissenting Opinion at p. 402–403. This overlooks the fact that prior to 1969, the proceedings to determine damages were held in the same court as the court which had determined that a private road should be opened. Prior to 1969, proceedings to open a private road and proceedings to assess damages were both held in the court of quarter sessions before a board of viewers. See: *In re Private Road in Monroeville Borough, Appeal of Marinclin, supra.* If a party were dissatisfied with the damages awarded by viewers, he was permitted to file exceptions. These exceptions were filed in the court of quarter sessions. *Id.* Only if he wanted to appeal from the viewers' award of damages and have his damages determined by a jury would he file an appeal in the court of common pleas. *Id.* This procedure was not changed in 1969. The only change made by constitutional amendment in 1969 was to consolidate the courts of quarter sessions and common pleas into one trial court to be known as the court of common pleas.

*clin, supra* 204 Pa.Super. at 558, 205 A.2d at 887–888. See also: *In re Private Road in Greene Township,* 343 Pa.Super. 304, 307, 494 A.2d 859, 860–861 (1985). "Appellate review of these matters is solely to ascertain the validity of the court's jurisdiction, the regularity of the proceedings, questions of law, and whether there has been an abuse of discretion. We cannot look beyond the record ... or consider questions of fact." *Little Appeal,* 180 Pa.Super. 555, 558, 119 A.2d 587, 588 (1956). See also: *Keller's Private Road,* 154 Pa. 547, 548, 25 A. 814, 814 (1893).

■ Appellants contend that the board of viewers in the instant case abused its discretion by failing to follow the statutory mandate to lay out a road having the shortest distance and in such a manner as to do the least damage to the remaining land. However, the length of the roadway and the amount of damage caused are only two of several considerations mandated by statute. Of equal importance is the "best ground for a road."

The three possible routes in the instant case are depicted as follows:

LOCATION MAP

SCALE 1"=2000'

According to Plan No. 1, the roadway would extend from Legislative Route 41080 to the southeast corner of the Harris tract. It would cross the Heffner tract via an

existing roadway through woodland, traverse a field used for farming on the Temple tract, continue along an existing roadway on the Temple tract, and terminate at the Harris tract, where it would connect with another existing roadway. The roadway across lands of Heffner and Temple would rise an average of 1.11 feet in 100 feet, a grade of 1.11%. The steepest grade would be 4.81%. The length of this road would be 2596.31 feet. It would take .4340 acres from the Heffner tract and .9965 acres from the Temple tract. Of the total length of this roadway, however, a distance of 1311.22 feet would be over existing roadways, consuming .7224 acres. The balance of the road, 1284.99 feet in length and .707 acres in area, would traverse farmland owned by Temple. Of all possible routes, this roadway would be the easiest to maintain.

The route envisioned by Plan No. 2 is the shortest route. It would commence at Township Road 738, cross the Temple property at a descending grade of 13.62% to a stream, and then continue across the Temple property at an ascending grade of 12.61% to the Harris tract. The steepest grade would be 14.57%. This route would be 1062.70 feet in length and would take .5855 acres from the Temple tract. There was engineering testimony that the grades for such a road would be excessive and that extensive drainage ditches would be necessary to capture surface run-off and prevent a washout of the road. To construct such a road it would be necessary to erect a drainage structure across the stream and to alter the road's surface with fill in order to accommodate its entrance at the township road. Whether an all-weather road could be maintained adequately was uncertain.

The roadway to be accommodated by Plan No. 3 would also begin at Township Road 738, but it would terminate at the northwest corner of the Driver tract. This roadway would be 1932.8 feet in length and would take 1.056 acres of pasture land owned by Temple. The average grade of such a road would be 8.94%, but the steepest grade would be 21.17%. The roadway would be winding and would include

several sharp turns. It would be bordered on the south by a stream and, therefore, would require extensive drainage ditches and cross-drains to capture and divert surface waters away from the road in order to prevent flooding of the road. These necessary improvements, according to engineering testimony, would significantly increase the cost of constructing the road.

The board of viewers concluded from the evidence presented that the excessive grades and poor, overall terrain over which routes 2 and 3 would run "made them less practical than Plan No. 1 in spite of the fact [that] Plan No. 1 [was] longer and [would cause] more injury than the others." The board also observed that Plan No. 1, as surveyed, would minimize the injury to Temple's farmland by following the contour lines and crop rows as it crossed his field. Finally, the board found that the road envisioned by Plan No. 1 would be an all-weather road; whereas, the other routes had the potential for becoming impassable in winter months and during periods of heavy rains. Thus, even though it entailed the longest route, the roadway included in Plan No. 1 would be constructed over the most suitable ground.

The board's findings are fully supported by competent evidence. The trial court found no abuse of discretion and confirmed the report of the viewers. Our review of the record discloses no basis for reversing the order of the trial court.

■ Appellants argue, however, that the relief sought by the petitioner-appellees was barred by principles of res judicata. In support of this argument they point to a prior action in equity wherein appellees were unable to prove a right-of-way by prescription. There is no merit in this argument. The doctrine of res judicata precludes relitigation of an issue of fact or law which was fully litigated in a prior action. "[B]efore the doctrine of res judicata will apply, there must be: (1) identity of the thing sued ... for; (2) identity of the cause of action; (3) identity of the ... parties to the action; and (4) identity of the quality or

capacity of the parties suing or being sued." *Shindel v. Leedom*, 350 Pa.Super. 274, 278, 504 A.2d 353, 355 (1986).

 In the prior equity action, the court determined that appellees had failed to prove that their use of a roadway across land owned by Temple had been open, notorious, continuous, and hostile for a period of 21 years. The present proceedings are authorized by statute and are determined by necessity. Because the parties are agreed that appellees' properties are landlocked, the need for a private road has been fully established. The remaining issues concern location and such things as grade and practicality. These are not the same issues which were litigated in the prior action in equity. Clearly, therefore, the present proceedings are not barred by principles of res judicata.

 It is correct, as appellants contend, that the route adopted by the viewers and confirmed by the trial court will cross through prime farmland. This fact, however, will be reflected in the amount of damages which they will be entitled to recover as a result of the taking of their land. It does not alone prevent the laying out of the road across land otherwise found most suitable for roadway purposes.

The order confirming the report of viewers is affirmed.

OLSZEWSKI, J., files a concurring and dissenting opinion.

KELLY, J., files a dissenting opinion in which BECK and JOHNSON, JJ., join.

OLSZEWSKI, Judge, concurring and dissenting:

I agree with the majority that an order granting a request to open a private road pursuant to 36 P.S. § 2731 is final and appealable. I respectfully disagree, however, with the majority's decision to affirm the finding of the Board of Viewers. In my view, the Board abused its discretion in designating Plan No. 1 as the right-of-way.

Section 1785 of Title 36 requires that the Board consider the following factors in determining the site for a private

road: (1) the shortest distance; (2) the best ground; (3) the least injury to private property; and (4) as far as practicable, the desire of the petitioners. 36 P.S. 1785. A review of the findings of fact and conclusions of law submitted by the Board reveals no support for the selection of Plan No. 1 as the sight for the private road.

Section 1785 first requires that the Board take into consideration the shortest route for a private road. It is undeniable that Plan No. 1 encompasses the greatest distance. Indeed, the total length and area of Plan No. 1 (2,596.31 feet/.9965 acres) is over twice that of Plan No. 2 and more than one-third longer than Plan No. 3. Therefore, this Section 1785 factor should weigh against the adoption of Plan No. 1.

The Board, however, appeared to be unpersuaded. In giving "consideration" to this factor, the Board stated:

> The Board took into *account* all of the first three factors specified in the Act and after weighing *all three* concluded that Plan No. 1 was the most practical way ... in spite of the fact Plan No. 1 is longer.

Findings of fact and conclusions of law, 3/21/86 at 11 (emphasis in original). In effect, the Board simply paid lip service to this factor. This error by the Board is not without consequence; having failed to consider and properly weigh one of the four factors, the balance of the remaining factors easily tips in appellees' favor.

The second Section 1785 factor requires that the Board consider "the best ground for the road." 36 P.S. 1785. The evidence of record readily supports a finding that the best ground for the road is in Plan No. 1. As the Board noted, the lands contained in Plans No. 2 and 3 have have relatively high grades and are prone to water runoff. Accordingly, the use of vehicles during the winter and rainy seasons would be difficult.[1] On the other hand, the ground in Plan

---

1. Appellees' expert opined that with maintenance Plan No. 2 could be made drivable in all seasons. Notes of hearing before Board of Viewers, 6/28/85 at 46.

No. 1 is nearly level with a relatively dry terrain. This factor, therefore, easily weighs in favor of Plan No. 1.

Third, the Board was required to determine which route would cause the least injury to the private property. As for this Section 1785 factor, the Board stated: "Plan No. 1 would be more inconvenient ... because in part it would divide in two parts a plot ... which is cultivated, crop-producing farmland." Findings of fact and conclusions of law at 8. In justifying its conclusion, the Board also noted that Plan No. 1 "causes more injury than the others [but] ... is designed to minimize the injury to the field of Earl J. Temple by following contour lines and crop rows where it crosses the field and by being on the edge of the field for the remainder of the way." *Id.* at 11. Despite the Board's attempt to minimize the injury to appellants, the fact remains that Plan No. 1, unlike Plans No. 2 and 3, severs appellants' prime, crop-producing farmland. Prime farmland simply should not be sacrificed when laying out a private road.[2] Based upon the evidence presented at the hearing as well as the Board's own statements, I believe that this factor weighs against the use of Plan No. 1.

The fourth Section 1785 factor requires that the Board consider the desire of the petitioners. Given that this factor will always favor the petitioning party, some measure of restraint is necessary in giving weight to this consideration. Consequently, the petitioner's desire is tempered by a notion of practicability. It is only to an extent which is "practicable"[3] or reasonable that a petitioner's desire is taken into consideration.

2. Although the provisions of the Act creating the Agricultural Lands Condemnation Board, Act No. 100 of 1979, 71 Pa.S. § 106, are not directly applicable, the Act evidences an express policy of this Commonwealth to preserve farmland.

3. "[Practicable] means the accomplishing of something which is reasonable to accomplish, and it includes the doing of what is unreasonable or unnecessary.... 'A thing practicable must necessarily be possible, but a thing may be possible that is not practicable.'" *Jeannette Glass Co. v. Indemnity Insurance Co.,* 370 Pa. 409, 417, 88 A.2d 407, 411 (1952) (Musmanno, J., dissenting).

In this case, appellees favored Plan No. 1. Pursuant to the fourth Section 1785 factor, the question presented to the Board was as follows: Is it practicable to permit appellees to build a lengthy, private road through the prime farmland of one property owner and over the land of another owner, merely because the route has a smaller grade and would be less costly to maintain? [4] I believe the Board acted improvidently in answering this question in the affirmative. The private interest of appellees in obtaining an access route of choice should be subservient to the interest of the landowner whose property is being confiscated. In other words, Section 1785 permits appellees to obtain a practicable or reasonable road, not the best possible road.

A review of the Section 1785 factors establishes that two factors—the length of the road and the injury to private property—weigh against adoption of Plan No. 1. One factor—the best ground for the road—weighs in favor of that plan. As for the last factor—the desire of appellees—I believe the Board acted improvidently in concluding that neither Plan No. 2 nor Plan No. 3 was a reasonable alternative.

Finding that the balance of the Section 1785 factors weigh against the adoption of Plan No. 1, I would, therefore, reverse.

KELLY, Judge, dissenting:

I dissent. I would find that an order authorizing the opening of a private road is subject to appellate review only after the issue of damages has been resolved. Accordingly, I would quash the instant appeal as interlocutory.

Preliminarily, I note that in the interest of judicial economy, our courts have consistently adopted a policy of discouraging multiple appeals in a single case. "The fair and efficient administration of justice cannot tolerate 'piecemeal

4. The cost of building a road is not a factor in this determination. Appellees' expert witness could not determine whether Plan No. 1 (which is a more lengthy route), or Plan No. 2 (which has a steeper grade) would be a more costly alternative. The testimony established, however, that Plan No. 2 would be more costly to maintain.

determinations and the consequent protraction of litigation.' " *Beers v. Raub,* 363 Pa.Super. 521, 526 A.2d 801 (1987), *citing Fried v. Fried,* 509 Pa. 89, 97, 501 A.2d 211, 215 (1985); *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978); *Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983). Thus, we will ordinarily review only those cases where the trial court enters a final order that "ends the litigation" or "disposes of the entire case." *Pugar v. Greco, supra; Zarnecki v. Shepegi,* 367 Pa.Super. 230, 532 A.2d 873 (1987). However, this "final judgment" rule is not without exceptions. Under the so-called *Cohen* [1] collateral order test, an otherwise interlocutory order is immediately appealable when "(1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Pugar v. Greco, supra,* 483 Pa. at 73, 394 A.2d at 545. *See also Bell v. Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975); *Fidelity Bank v. Duden,* 361 Pa.Super. 124, 521 A.2d 958 (1987).

The majority finds that "an order finally confirming the opening of a private road is an order which is sufficiently final to permit immediate appellate review." 374 Pa.Super. at 401, 543 A.2d at 140. It is unclear whether the majority finds that the order is "final" or whether the majority holds that the order is interlocutory and meets the criteria for immediate appealability. I would find that the order is neither final nor of such exigency that it meets the third prong of the collateral order test for immediate appealability.

First, the order is not final by traditional standards, as it does not end the litigation or dispose of the entire case. The parties stipulated that once the Board designated a route, a separate hearing would be held to determine the

**1.** The collateral order doctrine was originally set forth in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

damages owed appellants. (N.T. 6/28/85 at 7). This damages phase of the litigation has not yet taken place.

Moreover, I would find that the order does not meet the third prong of the *Cohen* collateral order test, requiring the order to be such that "if review is postponed until final judgment in the case, the claimed right will be irreparably lost." *Pugar v. Greco, supra.* The majority, *citing Weaver's Road,* 45 Pa. 405 (1863), finds that proceedings to open private roads and subsequent proceedings to access damages therefor are distinct proceedings, and that the commencement of proceedings for the assessment of damages is a waiver of defects in the order confirming the opening of the private road. Thus, according to the majority, the right to challenge the order confirming the opening of a private road will be "irreparably lost" unless an immediate appeal is allowed. In my view, much has changed since *Weaver's Road* was written in 1863; the major changes in judicial practice and procedure in the Commonwealth have virtually eliminated the truly bifurcated nature of the previous procedure. I believe that the old waiver rule is also a product of the bygone era, and is no longer applicable.

I find that the reasoning stated in *Beers v. Raub, supra,* is both instructive and persuasive. In *Beers,* a panel of this Court noted that, prior to 1969, private road cases followed a truly bifurcated course, with the possibility of multiple appeals from the quarter sessions judge to the court of common pleas. As stated in *Beers:*

> The Act of 1836 [Act of June 13, 1836, P.L. 551, 36 P.S. § 2731 *et seq.*] vested the courts of quarter sessions with jurisdiction over private road cases. The quarter sessions judge appointed the board of view and either confirmed or rejected the viewers' report. *See* 36 P.S. §§ 2731, 2732. The Act of April 15, 1891, P.L. 17, § 1, 36 P.S. § 2151, allowed any party aggrieved by the viewers' award of damages the right to appeal the confirmation of that award to the court of common pleas, where a jury would determine the issue 'according to the course of the

common law.' This right of appeal applied to private road cases by virtue of section 16 of the Act of 1836, 36 P.S. 2736. *See Mattei v. Huray,* 54 Pa.Commw. 561, 565 n. 5, 422 A.2d 899, 901 n. 5 (1980). Thus, proceedings for opening private roads followed a bifurcated course at the time we decided *Monroeville Borough.* The aggrieved party could appeal the confirmation of the viewers' report directly to this court from the court of quarter sessions. At the same time, the party could appeal the damages portion of the report to the court of common pleas for a jury trial.

526 A.2d at 803. The *Beers* panel opined that the previously bifurcated procedure in private road cases was eliminated in 1969 with the establishment of unified courts of common pleas and the elimination of various inferior courts, including the courts of quarter sessions. The *Beers* court reasoned that since, under the new procedures, the same court which confirms the viewers' report also conducts the trial on damages, the need for piecemeal review of private road cases had been removed.

Upon the reasoning stated in *Beers, supra,* I would find that the waiver rule is no longer applicable. The court of common pleas may now render one decision regarding the issues of opening a private road and damages. Certainly, the proceedings remain "bifurcated" in the sense that they focus upon separate issues. However, I would find this separate focus more closely analogous to the separate liability and damages phases of a jury trial. Just as an order granting partial summary judgment on liability is not appealable until after an order is entered disposing of the damages issues,[2] I would find that the order in the instant case is not immediately appealable.

I would quash the appeal as interlocutory.

BECK and JOHNSON, JJ., join.

2. *See Swift v. Milner,* 296 Pa.Super. 463, 442 A.2d 1144 (1982).