In re Barry Keith BRINKER and Joann C. Brinker, His Wife, Petition for Appointment of Board of View to Open Road and Assess Damages.

Louis E. ORIENT and Pearl D. Orient, his wife, August J. Hirko, Camille Naffah, Carol L. Dinco, Harry A. Ressler, Jr., Lois W. Ressler, and Keystone Raceway Park, Inc.

Appeal of Louis E. ORIENT and Pearl D. Orient, his wife, August J. Hirko, Camille Naffah, and Carol L. Dinco, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.

Decided Oct. 17, 1996.

---

William J. Ober, for Appellants.

Richard L. Jim, for Appellees, Barry and Joann Brinker.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Louis and Pearl Orient, August Hirko, Camille Naffah and Carol Dinco (collectively, Appellants) appeal an order of the Court of Common Pleas of Westmoreland County (Common Pleas) confirming a report of a Board of View finding that a private road across portions of their properties should be opened.

In addressing the issues presented, an understanding of the procedural background, including the chronological development of the case, is necessary. This litigation was commenced when Barry Brinker and Joann Brinker, husband and wife, brought an action pursuant to Section 11 of the Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. § 2731, commonly known as the Private Road Act, to condemn a private road over the properties of Appellants. Following a view of the site and a hearing, the Board of View on March 22, 1995 filed a report with Common Pleas finding necessity to layout and establish a private road from the Brinkers' landlocked property over Appellants' properties to the public road and assessing damages for the same.

On that same day, Common Pleas confirmed *nisi* the Board's report and entered an order directing the Brinkers to pay damages in the amount of $2,050.00 to the Appellants.[1] On April 19, 1995, Common Pleas

---

1. Typed on the back of the bluebacker of the Board's report was the following signed order:

AND NOW, this 22nd day of March, 1995, the within Report of Board of Viewers is confirmed nisi.

entered a final order confirming the Board's report.[2] On April 21, 1995, Appellants filed "Objections and Appeal From Report and Award of Board of View." [3] Thereafter, Appellants filed a motion to vacate the April 19, 1995 order on the basis of their objections. Concluding that such "post-trial motions" were not permitted to challenge the Board's report, Common Pleas denied Appellants' motion on May 2, 1995. This appeal followed.

On appeal, Appellants argue first that Common Pleas erred in refusing to review the Board's report because Appellants appropriately and timely filed their objections and appeal within thirty days after Common Pleas confirmed *nisi* the Board's report.

In reviewing the relevant law, we initially note that the statutory provisions applicable to the instant case were enacted in 1836 and, aside from minor alterations, have remained untouched by our legislature. As such, the language describing the appropriate proce-

dure to lay out a private road is far from clear. Nonetheless, we must look to the Act to determine the appropriate procedure to condemn a private road to a landlocked property on the grounds of necessity.

The process to lay out a private road begins with Section 11 of the Act, 36 P.S. § 2731, which provides in pertinent part:

> The several courts of quarter session[4] shall, in open court as aforesaid, upon the petition of one or more persons ... for a road from their respective lands or leaseholds to a highway or place of necessary public resort, ... direct a view to be had of the place where such a road is requested, and a report thereof to be made, in the same manner as directed by the said act of thirteenth June, one thousand eight hundred and thirty-six.

After a view is held wherein the Board physically views the premises and, if necessary, holds hearings, the Board issues a report determining whether or not a private

---

BY THE COURT:
/s/
(Record (R.) at 26.)

Furthermore, on that day, the trial judge signed a "Motion" presented by counsel for the Brinkers which stated:

*MOTION FOR PAYMENT OF DAMAGES*

AND NOW, this 22nd day of March, 1995, upon Motion of Richard L. Jim, Esquire, attorney for Petitioners herein, the Court having confirmed nisi the report of the Board of Viewers and the assessment of damages therein, IT IS ORDERED, ADJUDGED and DECREED that said damages must be paid prior to opening of said road and the full amount of the damages namely $2,050.00 may be paid either to those entitled thereto or may be paid to the Office of the Prothonotary for their use at which time the road shall be deemed opened.

BY THE COURT:
/s/
(R. at 27.)

2. Again, the trial judge actually signed a "Motion" presented by counsel for the Brinkers, which stated:

*MOTION FOR JUDGMENT*

AND NOW, this 19th day of April, 1995, upon Motion of Richard L. Jim, Esquire, attorney for Petitioners herein, it appearing the full damages in the amount of $2,050.00 were deposited with the Office of the Prothonotary, on March 22, 1995, and further no Appeal or Post Trial Relief having been filed by those affected by the Order of March 22, 1995. IT IS OR-

DERED, ADJUDGED and DECREED as follows:

The respondents and all others be, and are hereby forever barred from asserting any right, lien, title or interest to the right of way or easement described on Exhibit "A" inconsistent with the interest or claim of Barry Keith Brinker and JoAnn C. Brinker; from impeaching, denying or in any way attacking [the Brinkers'] interest in and to said property; from issuing or maintaining any action attacking the same or any part thereof.

/s/
(R. at 29.)

3. On April 5, 1995, Appellants filed a "post-trial motion" alleging that the Board abused its discretion in assessing damages and in finding necessity for the private road. The trial court, however, never acted on this motion, apparently at the request of Appellants' counsel. On the back of the motion, the prothonotary wrote:

Mr. Ober [Counsel for Appellants] does not want an assignment at this time. He wants this to just be filed.
(R. at 28.)

4. In 1969, by Constitutional amendment, the Courts of Quarter Sessions and Common Pleas were consolidated into one trial court known as the Court of Common Pleas. *Driver v. Temple*, 374 Pa. Superior Ct. 389, 543 A.2d 134, *petition for allowance of appeal denied*, 520 Pa. 607, 553 A.2d 969 (1988).

road is necessary.[5] The report is then filed with the court which had directed the view and that court may confirm the report, or reject it and direct a review. *In re Laying Out a Private Road*, 405 Pa. Superior Ct. 298, 592 A.2d 343 (1991).

Generally, the Board has broad authority under the Act to determine the necessity for a proposed road. *Graff v. Scanlan*, 673 A.2d 1028 (Pa.Cmwlth.1996).[6] And, although the Board's findings are subject to review by Common Pleas, the Court cannot look beyond the record or consider questions of fact. Rather, Common Pleas has appellate review which is limited to ascertaining the validity of the Board's jurisdiction, the regularity of the proceedings, questions of law and whether the Board abused its discretion. *Driver.*

If Common Pleas confirms the report, pursuant to Section 4 of the Act, 36 P.S. § 1832, the court "shall direct of what breadth the road so approved shall be opened, and *at the next court thereafter the whole proceedings shall be entered on record,* and thenceforth such road shall be taken, deemed and allowed to be a lawful public road or highway, or private road, as the case may be." (Emphasis added.)

In *Croyle Township Road*, 37 Pa. Superior Ct. 57 (1908), the Superior Court explained that Section 4 mandates that Common Pleas' initial confirmation is made *nisi*[7] and then the case remains in fieri until the

next Court term.[8] The purpose of Section 4 is to provide interested parties a time period within which they may file exceptions and petition for review. *Croyle.*

Following confirmation *nisi*, according to *Section 16* of the Act:

[t]he damages sustained by the owners of the land through which any private road may pass shall be estimated in the manner provided in the case of a public road,[[9]] and shall be paid by the persons ... at whose request the road was granted or laid out: Provided, That no such road shall be opened before the damages shall be fully paid.

The initial proceedings to open (*i.e.*, condemn) private roads and subsequent proceedings to assess damages for the taking are distinct and require separate analyses. Prior to 1969, proceedings to open a private road and proceedings to assess damages were both held in the Court of Quarter Sessions following a report of a Board of View. *Id.* If a party was dissatisfied with the report of the Board, including the damages awarded by the Board, he or she was permitted to file exceptions, as provided in Section 4 above, in the Court of Quarter Sessions. If the party wanted to appeal from the Board's award of damages and have his damages determined by a jury, however, that party was required to file an appeal in Common Pleas. *Id.* Because the Courts of Quarter Sessions and Common Pleas were consolidated into one trial court in 1969, obviously, a

---

**5.** Section 2 of the Act, 36 P.S. § 1785, requires the Board to consider the following factors in determining the site for a private road: (1) the shortest distance, (2) the best ground for the road, (3) the least injury to private property and (4) as far as practicable, the desire of the petitioners.

**6.** In order to justify the taking of property for private use, however, the Board must determine that the road is of "strictest necessity." *Graff.*

**7.** Section 4 also provides that the Court, not the Board, must fix the width of the road to be opened at the time that it approves *nisi* the Board's report.

**8.** Section 4 does not contemplate a fixed time period in which a party could file exceptions. For example, in *Road in Collins and Peebles*

*Townships*, 36 Pa. 85 (1859), our Supreme Court rejected the appellants' contention that seven days between confirmation *nisi* and order to review was insufficient so as to allow them to file exceptions to the report. In that case, the report was confirmed *nisi* on March 20, 1854 and, on March 27, 1854, which was *the commencement of the next term of the Court of Quarter Sessions*, the petition for review was granted. Because the Court's order granting review occurred in a subsequent term of Court, Section 4 of the Act was satisfied, and, therefore, the Supreme Court held that appellants had the time and the opportunity to file exceptions to the report.

**9.** In *Mattei v. Huray*, 54 Pa.Cmwlth. 561, 422 A.2d 899 (1980), we explained that this section does *not* refer to the Eminent Domain Code, but rather refers to the manner in which damages are assessed for public roads as provided by the Act of 1836, itself.

dissatisfied party must now challenge both the necessity for the road and the damage assessment by petitioning Common Pleas.

The bifurcated nature of the process, however, continues. Specifically, Common Pleas is required to determine all legal issues relating to the "necessity" of the taking of another's land for private use before the damages to be paid can be assessed. *Driver.* Further, an aggrieved party is entitled to a jury trial solely on the issue of damages and not on the issue of necessity. *In the Interest of Jones,* 161 Pa.Cmwlth. 382, 636 A.2d 1304 (1994), *petition for allowance of appeal denied,* 168 Pa.Cmwlth. 225, 649 A.2d 488 (1994).[10]

The essence of Appellants' argument on appeal is that Common Pleas prematurely entered an order which finally confirmed the report of the Board and thereby deprived Appellants of the opportunity to except to the Board's report finding necessity for a private road as well as the opportunity to demand a jury trial on the issue of damages. It appears to be Appellants' position that before Common Pleas may finally confirm a Board's report recommending the opening of a private road, that court must wait *at least thirty days* after confirmation *nisi* so as to allow an aggrieved party to file exceptions to the report and/or appeal from the damage assessment.

Although the archaic language of the Act provides little guidance to resolve the issue presented by Appellants,[11] we conclude that the language of Section 4 regarding the appropriate period in which to challenge the Board's report is no longer controlling because it was repealed by Section 2(g) of the Judiciary Act Repealer Act of 1980 (JARA), 42 Pa.C.S § 20002(g) and supplanted by Sec-

tion 5571(b) of the Judicial Code, 42 Pa.C.S. § 5571(b).

In *Appeal of Chartiers Valley School District,* 501 Pa. 620, 624, 462 A.2d 673, 675–76 (1983), our Supreme Court explained:

The Judicial Code was created by the Judiciary Act of 1976, which, in conjunction with the Judiciary Act Repealer Act (JARA) and the Judiciary Act Repealer Act of 1980 (JARA 80), represent 'the culmination of a ten year effort to achieve the first complete judicial codification in Pennsylvania's history.' 42 Pa.C.S.A. § 101 to 1700, p.vii (1981).

Although the Judicial Code was enacted in 1976, it did not take effect until June 27, 1978, the effective date of JARA. The primary purpose of JARA (and the subsequent JARA 80), was to repeal those statutes which had been supplanted by the Code. To this end, Section 2(a) of JARA, 42 Pa.C.S.A. § 20002(a), expressly repealed parts or all of more than 1500 statutes, comprising approximately 6000 sections of Purdon's Pennsylvania Statutes, enacted between 1700 and 1977. In addition to this express repealer, Section 2(g), 42 Pa.C.S.A. § 20002(g)[,] provided:

All other parts of those acts which are specified in this section and all other acts and parts of acts are hereby repealed insofar as they are in any manner inconsistent with this act or the act to which this is a supplement.

Appellants argue that Section 5571(b) [42 Pa.C.S. § 5571(b) ] is inapplicable where a specific appeal period has been provided by an applicable statute, and that statute has not been specifically repealed. Section 5571(b) of the Judicial Code, 42 Pa.C.S.A. § 5571(b) provides:

§ 5571. Appeals generally

---

**10.** In *Jones,* we held that where a party seeks review of an order **finally** confirming a Board's report *on the question of the necessity* for a private road, "post-trial" motions under Pa.R.C.P. No. 227.1 are not permitted. Rather, the correct procedure is to file a notice of appeal with the Commonwealth Court. The *Jones* Court further recognized, however, that "post-trial" motions may be filed with Common Pleas where a party challenges a *jury trial verdict on damages* assessed for a private road.

**11.** Specifically, Section 4 of the Act provides that a court must confirm *nisi* the report then wait until the next court "term" before final confirmation so as to allow exceptions to be filed. The "terms" of the Court of Quarter Sessions, however, no longer exist and have no equivalent in our modern Court of Common Pleas. Thus, although the Act clearly provides parties, such as Appellants, with the *right* to take exception to the Board's report, the Act, itself, no longer provides the time period within which to do so.

. . . .

(b) Other courts. Except as otherwise provided in subsections (a) and (c), an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced *within 30 days after the entry of the order from which the appeal is taken,* in the case of an interlocutory or final order.

Given the overriding purpose of the Judicial Code, *the obvious intent of the legislature in enacting this section was to make uniform the appeal period applicable to cases heard by our courts.* (Footnotes omitted.) (Emphasis added.)

Courts have consistently interpreted Section 5571(b) as requiring that the thirty day appeal period begins on the date the order appealed from is entered on the docket. *Claims of Linefsky,* 159 Pa.Cmwlth. 234, 632 A.2d 1061 (1993), *petition for allowance of appeal denied,* 539 Pa. 639, 650 A.2d 54 (1994).

In *Linefsky,* we held that Section 5571 of the Judicial Code is applicable to an appeal from a report of a Board of View to Common Pleas because a "board of viewers is a 'tribunal or other government unit' as envisioned by Section 5571, from which an appeal may be taken to a court" and "the Rules of Appellate Procedure reveal[ ] that this Court, as well as the trial court must apply the principles underlying appeal procedures in a consistent manner, regardless of the nature of the appeal." 632 A.2d at 1064.

In that case, we addressed the issue of when the thirty day appeal period commences in a case arising under the Eminent Domain Code. As noted above, the answer to this question turned on the date that the **order** appealed from was entered on the docket. Noting that in an eminent domain case it is the Board's award, itself, which is appealed to Common Pleas and where no appeal is taken the report becomes final as of course, we held that the thirty-day period begins on the date that the **report** is docketed.

Turning now to the instant case, we find that in a private road case, whether a party files "exceptions" to a Board's report finding necessity for a private road or an "appeal" from a Board's assessment of damages for the same, it is clear that Common Pleas acts solely in an appellate capacity. Further, in contrast to an eminent domain case, in a private road proceeding, the Board's report, itself, has no effect unless and until Common Pleas enters an order confirming it. Accordingly, we hold that in a private road case, the "order appealed from" is the Court's order confirming *nisi* the Board's report; thus, a party wishing to challenge the report must file exceptions regarding the Board's finding of necessity and/or an appeal of the Board's assessment of damages,[12] with Common Pleas within thirty days after the date on which the Court's order confirming *nisi* the Board's report is entered on the docket. It follows that after confirmation *nisi* of a Board's report, Common Pleas must wait at least thirty days before entering a final order so as to allow parties the appropriate time in which to appeal.

In the instant case, Common Pleas confirmed *nisi* the Board's report on March 22, 1995, the same day the report was filed, and then, 27 days later, on April 19, 1995, Common Pleas confirmed the report by a final order. Appellants thereafter filed "Objections and Appeal from Report and Award of Board of View" on April 21, 1995, *29 days after confirmation nisi.* Because the trial court did not wait at least thirty days after confirmation *nisi* before final confirmation and because the trial court refused to consider Appellant's timely objections/appeal, we hold that Common Pleas erred as a matter of law. Accordingly, we vacate Common Pleas' order and remand the matter so that Common Pleas may consider Appellant's objections/appeal.

Jurisdiction relinquished.

### *ORDER*

NOW, October 17, 1996, the order of the Court of Common Pleas of Westmoreland

---

12. Of course, if the party desires a jury trial on the issue of damages, he or she must also make a demand in his or her appeal at this time.

County in the above-captioned matter is hereby vacated. This matter is remanded so that the trial court may consider Appellants' "Objections and Appeal From Report and Award of Board of View."

Jurisdiction is relinquished.

