In re PRIVATE ROAD, COGAN TOWNSHIP, LYCOMING COUNTY, PA.

Bruce E. EMIG and Cindy R. Emig, His Wife

v.

BOBST MOUNTAIN HUNTING CLUB and Perry I. Adelson and Kay A. Adelson, His Wife, and Russell G. Kimura and F. Denise Hamby, His Wife

Bobst Mountain Hunting Club, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1996.
Decided Oct. 29, 1996.

Jonathan E. Butterfield, for Appellant.

Daniel K. Mathers, for Appellees.

Before DOYLE and LEADBETTER, JJ., and MIRARCHI, Jr., Senior Judge.

DOYLE, Judge.

Bobst Mountain Hunting Club (the Hunting Club) appeals an order of the Court of Common Pleas of Lycoming County (Common Pleas) confirming the report of a Board of View which found that a private road across portions of the Hunting Club's property should be opened to Bruce and Cindy Emig, abutting property owners.

The Emigs own a landlocked parcel of land located in Cogan Township, Lycoming County. Previously, they had accessed their property by means of an existing road known as "Coal Mountain Road" and a connecting dirt road, which the parties in the instant proceedings refer to as "Spur Road." Both Coal Mountain Road and Spur Road are located on property owned by the Hunting Club.[1] When the Hunting Club terminated the Emigs' use of Coal Mountain Road and Spur Road and sought criminal sanctions against the Emigs for their alleged trespass on the Hunting Club's property, the Emigs brought an action pursuant to Section 11 of what is commonly known as the Private Road Act,[2] to condemn a three-mile private right-

---

1. Apparently, "Coal Mountain Road" also briefly passes through the property of Perry I. Adelson and Kay A. Adelson, husband and wife, as well as the property of Russell Kimura and F. Denise Hamby, husband and wife. Pursuant to Stipulation of Counsel, however, these parties take no position with regard to the Emigs' use of "Coal Mountain Road" and will abide by a court order directing such use. (See Reproduce Record (R.R.) at 47.)

2. Act of June 13, 1836, P.L. 551, as amended, 36 P.S. § 2731. Section 11 of the Act provides in pertinent part:

> The several courts of quarter session shall, in open court as aforesaid, upon the petition of one or more persons ... for a road from their respective lands or leaseholds to a highway or place of necessary public resort, ... direct a view to be had of the place where such a road

of-way over both Coal Mountain Road and Spur Road.

A view of the site was held on June 17, 1994 at which both parties and their attorneys were present. Thereafter, on June 27, 1994, a hearing was held at the office of counsel for the Hunting Club. At this hearing, the Hunting Club contended that a better, alternative route was available to provide access to the Emigs' property, *viz.*, an old logging road which only extended over the Hunting Club's land for 900 feet, as opposed to three miles, from Hoagland Run Road, the public road.[3]

On October 21, 1994, the Board filed a report with Common Pleas finding necessity for a private road and recommending the opening of the three mile route requested by the Emigs, that is, the route located on Mountain Road and Spur Road.

Thereafter, the Hunting Club filed exceptions to the Board's Report. In response, Common Pleas remanded the matter to the Board to file an amended report which would address the effect of the statutory limitation that the right-of-way could be no more than twenty-five feet wide regardless of the width of the existing roadway, and to address future maintenance questions regarding the roadway.

On January 11, 1996, the Board filed an amended report which provided that "[t]he width of the right-of-way shall remain the same as now exists except in those areas where it exceeds 25 feet. In those areas the width shall be reduced to 25 feet to conform to the specific limitation set by the Act of 1836." (Amended Report of the Board at 2; R.R. at 52.) In all other respects the original report was affirmed.

Thereafter, both the Emigs and the Hunting Club filed exceptions to the amended report of the Board. By order dated Febru-

ary 28, 1996, Common Pleas dismissed the exceptions and ordered:

1. The determination of the Board of View that [the Emigs] should have a private right-of-way over the Coal Mountain Road and Spur Road as more fully shown in Exhibit "A" of the Stipulation filed of record on August 24, 1995, is confirmed.

2. Said rights-of-way shall have a width of twelve and one-half (12 1/2 feet) on either side of the center line of the existing roadway except to the extent that the overall width of the existing roadway has historically been narrower, in which event the maximum width shall be the historic maximum width.

3. This matter shall be remanded to the Board of View, which shall conduct further proceedings and establish just compensation to be awarded to [the Hunting Club] by virtue of the grant of these private rights-of-way. . . .

(Opinion of Common Pleas, 2/28/96, at 3–4; R.R. at 58.)

This appeal by the Hunting Club followed.

■ We note that generally a Board of View has broad authority under the Act to determine the necessity for a proposed road. *Graff v. Scanlan,* 673 A.2d 1028 (Pa.Cmwlth. 1996).[4] And, although the Board's findings are subject to review by Common Pleas, the Court cannot look beyond the record or consider questions of fact. Rather, Common Pleas has appellate review which is limited to ascertaining the validity of the Board's jurisdiction, the regularity of the proceedings, questions of law and whether the Board abused its discretion. *Driver.*

■ In the instant case, the Hunting Club contends that the Board erred in failing to annex and return to Common Pleas a plot or draft of the proposed private road as man-

is requested, and a report thereof to be made, in the same manner as directed by the said act of thirteenth June, one thousand eight hundred and thirty-six.

36 P.S. § 2731.

In 1969, by constitutional amendment, the Courts of Quarter Sessions and Common Pleas were consolidated into one trial court known as the Court of Common Pleas. *Driver v. Temple,* 374 Pa. Superior Ct. 389, 543 A.2d 134, *petition for allowance of appeal denied,* 520 Pa. 607, 553 A.2d 969 (1988).

3. See attached topographical sketch.

4. In order to justify the taking of property for private use, however, the Board must determine that the road is of "strictest necessity." *Graff.*

dated by Section 3 of the Act, 36 P.S. § 1831. Section 3 of the Act provides:

> The viewers as aforesaid, shall make report at the next term of the said court, and in the said report shall state particularly: first, who of them were present at the view; second, whether they were severally sworn or affirmed; third whether the road desired be necessary for a public or private road; *they shall also annex and return to the court a plot or draft thereof, stating the courses and distances, and noting briefly the improvements through which it may pass,* and whenever practicable, the viewers shall lay out the said roads at an elevation not exceeding five degrees, except at the crossing of ravines and streams, where by moderate filling and bridging, the declination of the road may be preserved within that limit.

36 P.S. § 1831 (emphasis added).

In *In re Road in Conemaugh Township,* 20 D. & C. 428, 430 (Q.S. Somerset Co.1933), the Court of Quarter Sessions explained the purpose of the draft requirement:

> The report of viewers does set forth the distances but not the courses of the road, nor is there any plot or draft of the road attached thereto. It is possible that the location of the road might be discerned by physical markings on the ground, but how is this to be made a record which might be called into question many years in the future, when the title to the land upon which this private road is a servitude has passed into other owners. We think this defect is fatal. (Citations omitted.)

For the same reason, our Supreme Court in *Lower Makefield Road,* 71 Pa. 175 (1872), affirmed the decision of the Court of Quarter Sessions of Bucks County which set aside a report, *sua sponte,* on the ground that a plot or draft was not attached to the report finding necessity for a private road.

In the instant case, the report and amended report of the Board provides only that the right-of-way granted to the Emigs shall be located over Coal Mountain Road and Spur Road as shown on maps presented at the hearing and that the width of the right-of-way shall not exceed twenty-five feet.[5] Significantly, neither the report nor the amended report has a *draft or plot of the right-of-way annexed thereto which sets forth its courses and distances.* Although neither party presently appears to dispute the location of the right-of-way, without an adequate record, any subsequent owners of the subject property may be unable to discern the precise location of the private road.

Accordingly, we hold that the Board's failure to conform with the Section 3 draft requirement rendered the amended report fatally defective.

■ Section 58 of the Act, 36 P.S. § 1855, requires petitioners to provide a surveyor where the proposed road had not previously been surveyed. *Private Road of Brubaker v. Ruhl,* 23 Pa.Cmwlth. 418, 352 A.2d 566 (1976). In the instant case, although Coal Mountain Road was previously surveyed [6], this survey does not set forth the

---

5. Regarding the location of the private road, the Board reported:

> an access and right-of-way to [the Emigs'] parcel over ... 'Coal Mountain Road' and the 'Spur Road.' The width and length of the right-of-way shall remain the same as they are as of this date.

(Original Report of the Board at 4; R.R. at 37.) In the Board's amended report, the Board added the following:

> The Board also considered whether a plan of the right-of-way would be appropriate. The observation of the Board as we travelled over the entire right-of-way including the spur was that it was clearly defined. The Emigs and representatives of the Hunting Club were present during the entire trip and there wasn't any disagreement as to the location of the right-of-way. The testimony at the hearing was strictly

limited to which right-of-way should be selected. Neither of the parties indicated a problem regarding where the Coal Mountain Road and spur right-of-way was located.

> The Board also was shown maps at the hearing which in our opinion adequately shows the location of the Coal Mountain Road and spur right-of-way.

> DECISION

> The Board of View hereby changes its original report. ... [W]here the [width] exceeds 25 feet .... the width shall be reduced to 25 feet to conform to the specific limitation set by the Act of 1836.

(Amended Report of the Board at 2; R.R. at 52.)

6. Attached to a Stipulation of Counsel which was filed with Common Pleas is a draft prepared by Hunt Engineers which generally sets forth the

courses and distances of the right-of-way and, therefore, does not satisfy Section 3 of the Act. Moreover, the record is devoid of any survey regarding Spur Road.

Accordingly, this case must be remanded to Common Pleas to allow the Emigs to enter the subject property and conduct the necessary engineering survey of the right-of-way. Once the Emigs have conducted this survey, the Board need only annex it to the Board's report and then return the amended report to Common Pleas in order to satisfy Section 3 of the Act. *See New Hanover Road*, 18 Pa. 220 (1852) (holding that it is permissible under the Act to attach pertinent drafts to a Board's report *after* the Board has signed the report and disbanded).

■ The second issue presented by the Hunting Club on appeal is whether the Board abused its discretion by failing to properly consider the criteria set forth in Section 2 of the Act, 36 P.S. § 1785, regarding the location of the private road. Section 2 provides:

> The persons appointed as aforesaid, shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of petitioners.

36 P.S. § 1785.[7]

■ In *In re Private Road in Nescopeck Township*, 281 Pa. Superior Ct. 341, 346, 422 A.2d 199, 202 (1980), the Superior Court explained:

> The location of the road is wholly within the province of the viewers. Viewers go upon the premises of a proposed road and observe all the physical aspects of the land and are far better able to select a location than any judges sitting in the courthouse.

The statute gives the viewers power to locate the road.

(quoting *In re Private Road in Juniata Township*, 61 D. & C. 418, 426–27 (C.P.Pa. 1948)). For this reason, we will not disturb the Board's decision regarding the location of the Road absent manifest abuse of discretion. *Driver.*

■ From a reading of the Board's report in the instant case, it is clear that the Board *did* consider all the factors in determining whether the road should be opened as petitioned for by the Emigs. In this regard, the Board stated:

> Testimony revealed that the current right of way over Coal Mountain Road and the spur road has been used for many years by several different people and is still used by persons other than [the Hunting Club].

> The alternative route although shorter is not developed at this time and poses problems such as the need for a bridge, water holes, land ownership and the cost of putting in a new road.

> Although the [Hunting Club] via their witnesses showed that [the Emigs'] use of the road does cause some problems, it does not seem that they are enough to warrant the difficulties which are involved with the alternate route.

> The "Coal Mountain Road" and "The Spur" roads extend approximately 3 miles as opposed to an alleged 900 feet for the alternate route preferred by the hunting club.

> The Board feels the disadvantages of the shorter route outweigh the obvious difference in distance.

> The shorter route has numerous mud holes and low spots as well as a steeper incline. The ownership of some of the land included in this route is unknown.

> The Board feels that the cost of this route would be considerable as well as the difficulties involved in dealing with the low

---

location of Coal Mountain Road. (*See* R.R. at 49–50.)

7. The Board need not make specific findings as to the factors listed in Section 2 of the Act as long as it is apparent from the Board's report

that the Board considered those factors in its decision. *In re Private Road in East Rockhill Township*, 165 Pa.Cmwlth. 240, 645 A.2d 313, *petition for allowance of appeal denied*, 539 Pa. 698, 653 A.2d 1235 (1994).

spots, the unknown land ownership and the procedures needed to put in a bridge.

The good condition of the "Coal Mountain Road" and "The Spur" as opposed to the problems involved with the alternate route make the "Coal Mountain Road" and "The Spur" the better and more convenient access to the Emig property.

(Original Report of the Board at 2–3; R.R. at 35–36.)

■ While the chosen route is approximately 2.8 miles longer than the alternative route, distance is only one of four factors for the Board to consider. Further, the Hunting Club does not dispute that the terrain of the alternative route has numerous problems and that the expense of constructing a road over this route is considerable.[8] Accordingly, we hold that the Board did not abuse its discretion in locating the private road over Coal Mountain and Spur roads which it found to be the better terrain and the petitioners' choice even though that location is longer and more injurious to private property than locating the road over the shorter, proposed alternative route.

Accordingly, we reverse the order of Common Pleas insofar as it dismisses the Hunting Club's exception to the Board's report regarding the Board's failure to annex and return to Common Pleas a plot or draft of the proposed private road; we remand the matter to Common Pleas to allow the Emigs to conduct the necessary engineering survey and to allow the Board to annex the appropriate drafts or plots of the proposed right-of-way. In all other respects the order of Common Pleas is affirmed.

Jurisdiction relinquished.

### ORDER

NOW, October 29, 1996, the order of the Court of Common Pleas of Lycoming County in the above-captioned matter is hereby reversed insofar as it dismisses the Hunting Club's exception to the Board's report regarding the Board's failure to annex and return to Common Pleas a plot or draft of the proposed private road. The matter is remanded to allow the Emigs to conduct the necessary engineering survey and to allow the Board to annex the appropriate drafts or plots of the proposed right-of-way. In all other respects the Order of the Court of Common Pleas is affirmed.

Jurisdiction is relinquished.

---

**8.** The Hunting Club contends, however, that the terrain of Coal Mountain Road is similar to the alternative route and that "[t]he big difference is ... in the case of the Coal Mountain Road and Spur Road, the problems posed by the steep ground have already been dealt with by the Hunting Club and its predecessor in title." (The Hunting Club's Brief at 19.) Therefore, the Hunting Club argues, the Board should not have considered the improvements which the Hunting Club made upon Coal Mountain Road in deciding which route has the best ground.

The Hunting Club's argument is wholly without merit. In order to determine the best ground, the Board must consider the terrain as it actually and presently exists, not how the terrain existed in the past; which party made improvements to the right-of-way chosen by the Board is not relevant. Further, in *East Rockhill Township*, 645 A.2d at 317, we affirmed a Common Pleas' decision which affirmed a Board's report because:

> From reading the decision, it is clear that the Board recognized that the adopted route was not the shortest distance, but it was appropriate because it was an *established* roadbed and its use required significantly less construction or maintenance.... (Emphasis added.)