**In Re: LAYING OUT AND OPENING a PRIVATE ROAD IN SULLIVAN TOWNSHIP, TIOGA COUNTY, Pennsylvania,**

**Appeal of: Tri–County Sportsmen's Club.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2008.

Decided Jan. 28, 2009.

Robert S. Cronin, Jr., Lancaster, for appellant.

William R. Stokes, II, Wellsboro, for appellee.

BEFORE: FRIEDMAN, Judge,[1] and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

In this private road case, Tri–County Sportsmen's Club (Tri–County) appeals an order of the Court of Common Pleas of Tioga County (trial court) opening a private road in favor of Hilltop Hunting Club, Inc. (Hilltop). The trial court's order confirmed a board of viewers' (Board) report finding necessity for the road under what is commonly referred to as the Private Road Act[2] and locating it on the existing roadbed. Discerning no error or abuse of discretion in the Board's findings and conclusions, we affirm the trial court's confirmation of the Board's report.

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

2. Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 1781–1785, 1831, 1832, 1907, 1931–2736, 2761.

Tri–County and Hilltop are currently owners of contiguous parcels of real property in Sullivan Township, Tioga County. Their properties are used for hunting camps and recreational activities. In 1966, Hilltop, a small hunting club, acquired its property, consisting of approximately 1.73 acres, from Bruno and Anna Wallenburg, who owned approximately 130 acres. Hilltop's property is located near the top of a mountain. In August 1966, Hilltop constructed a cabin on its property. In 2004, Hilltop acquired an adjacent 19.97 acre-lot tract between its 1.73 acre-lot and Tri–County's property.

Tri–County holds title to an adjacent tract of land east of Hilltop's property. Tri–County's trustees owned this property since 1960.

Since purchasing its lot in 1966, Hilltop accessed its property by driving over an existing dirt road that passes over Tri–County's land and terminates on Township Route 850. The existing road essentially bisects Tri–County's property. Hilltop never used any other access to its property. The 1966 Wallenburg deed to Hilltop provided for a right of way for ingress and egress to a public road over the former Wallenburg property. Hilltop assumed the former Wallenburg property included Tri–County's property. However, a title search revealed the Wallenburgs never owned Tri–County's property. As a result, Hilltop did not possess a deeded right of way over Tri–County's property.

Beginning in 1971, differences arose between the two clubs. Nevertheless, Tri–County permitted Hilltop to continue to use the road. However, in November 2003, Tri–County advised Hilltop it could no longer use the road unless it signed a 10–year lease. Hilltop signed the lease, which required a $10 per month payment to use the existing road.

In August 2004, Hilltop filed a petition for an appointment of viewers under the Private Road Act to lay out and open a private road over the existing road. Because it had no deeded right of way from a public road to its land, Hilltop alleged the existing road provided the only practical and best access from its property to a public road. Thereafter, the trial court appointed a board of viewers.

In its response to Hilltop's petition, Tri–County alleged the Wallenburg deed to Hilltop provided for un-delineated access to Hilltop's property over the former Wallenburg property, not the existing road over Tri–County's property. Tri–County asserted Hilltop should use the former Wallenburg property for access to a public road.

In April 2005, the Board viewed the property. In August 2007, following the resignation and replacement of a Board member, the Board held a hearing on the necessity for a private road. Although Hilltop acknowledged its 1966 deed granted an easement over the Wallenburgs' remaining lands, Hilltop presented evidence showing this terrain is extremely steep and the proposed route over the former Wallenburg property is very close to an electric company's right of way for its transmission poles.

In particular, Hilltop's engineer, Scott Bray (Engineer) testified the power line route Tri–County proposed would go straight up the mountainside next to the electric company's right of way and be constructed on slopes of 16–33 percent.[3] Notes of Testimony (N.T.), 08/08/07, at 33–

---

3. Engineer testified the Tioga County Subdivision and Land Development Ordinance, if applicable here, only permits construction of a private road for small subdivisions with a maximum slope of 15 percent. Notes of Testimony (N.T.), 08/08/07 at 30–31.

40. Construction of this 1100–foot[4] road up an extremely steep slope would cost about $30,000–$40,000. *Id.* at 40. The change in elevation from the township road up to Hilltop's property would be 220 feet. *Id.* at 37–38.

Engineer further testified ongoing maintenance, as well as runoff and erosion control of the power line route, would also be very expensive. *Id.* at 36–40. In addition, such a steep road would be treacherous during the winter hunting season. *Id.* at 37–38. Plowing uphill to gain access would be extremely difficult. *Id.* Also, the poles supporting the electric company's active power lines may be undermined by construction of the proposed road. *Id.* at 35–36.

As an alternative to a road straight up the face of the mountain next to the power line, Engineer testified a 1600–foot switchback road to a public road could be built to the north of Hilltop's property. *Id.* at 46–47. However, the extra portion of road would create increased runoff and erosion problems. *Id.* at 47–48. Also, the cost to construct the switchback road would be approximately $60,000. *Id.* at 55.

Engineer further testified he examined the topography of the remaining 130 acres of the original Wallenburg property, which mostly lies to the west of Hilltop's property. *Id.* at 43. Hilltop would run into the same issues anywhere on the property. *Id.* Accordingly, Engineer opined the existing road across Tri–County's property constituted the most reasonable and best location for an access road to Hilltop's property. *Id.* at 44. The existing road is safe, and it requires no construction and no extra maintenance. *Id.* at 43–44.

Tri–County did not present an engineering expert. Rather, it presented testimo-

ny from Charles Fogarty (Title Searcher), who examined the parties' deeds and chains of title. Title Searcher testified the Wallenburgs granted Hilltop un-delineated legal access to a public road anywhere over their remaining lands. *Id.* at 91. However, the Wallenburgs never owned the property Tri–County currently owns. *Id.* at 92. Also, Tri–County never granted Hilltop an easement or right of way over the existing road. *Id.* at 92–93.

Tri–County also asserts Engineer testified sufficient land exists on the former Wallenburg property north of Hilltop's lot to construct a switchback road to a public road.

In addition, Tri–County presented testimony from one of its members, Timothy Neiss, that if it was necessary for Hilltop to cross Tri–County's property, a better location would be across the southwestern corner of Tri–County's property bordering Hilltop's property. *Id.* at 131. Tri–County's members do not hunt in this area so there would be no danger of crossfire. *Id.* at 132. In contrast, the existing road bisects Tri–County's property. *Id.* at 133. This poses dangers for hunters and children present in that area. *Id.* at 133–34.

Following the hearing, the Board, with its new member, conducted a second viewing of the premises. The Board viewed the potential location across the southwestern section of Tri–County's property. Thereafter, the Board held a second hearing.

On March 31, 2008, the Board filed its report recommending opening a private road over the existing road. *See* Reproduced Record (R.R.) at 43a–47a. By a two-to-one vote, the Board concluded "necessity" for a private road, as defined in the Private Road Act and case law, exists

---

4. Although Engineer did not measure the existing road across Tri–County's property, he testified it is longer than the proposed 1100–foot road up the mountain. N.T. at 45–46.

here. *Id.* at 46a. The Board further concluded the trial court should award Hilltop a private road where the current road exists. *Id.*

Also on March 31, 2008, the trial court entered an order confirming the Board's report and awarding Hilltop a private road as per the terms of the Board's recommendations. Notably, the trial court did not style its order as a decree *nisi* and did not advise the parties they could file exceptions. *See In re Brinker,* 683 A.2d 966 (Pa.Cmwlth.1996) (proper procedure in a private road case is for common pleas to confirm *nisi* the board's report and allow 30 days for the parties to file exceptions to the finding of necessity or appeal the assessment of damages before entering final confirmation).

Tri–County nonetheless filed exceptions to the Board's report and a motion for reconsideration.[5] Tri–County also simultaneously appealed to this Court.[6]

However, Tri–County's exceptions were never presented to the trial court for disposition. As a result, they were never scheduled for argument, and the trial court never formally ruled on them. However, in its July 2008 opinion in response to Tri–County's appeal, the trial court noted it located Tri–County's exceptions in the original file. After reviewing the exceptions, the trial court determined it would overrule them. Trial Ct., Slip Op., 07/08/08, at 2. Citing *Mattei v. Huray,* 54 Pa.Cmwlth. 561, 422 A.2d 899 (1980), the trial court noted a determination of necessity for a private road is a factual matter for the Board and judicial review is limited to confirmation or rejection of the Board's report.

## Issues

In its appeal here, Tri–County asserts the trial court erred or abused its discretion in awarding the private road the same day the Board filed its report, thereby denying Tri–County the opportunity to file exceptions. In response, Hilltop asserts the trial court's order merely constituted a confirmation *nisi,* not a final confirmation. Therefore, Hilltop maintains Tri–County prematurely appealed an interlocutory order and this Court lacks jurisdiction.

On the merits, Tri–County asserts the Board erred or abused its discretion in finding the requested road necessary given Hilltop's right of way over the former Wallenburg property,[7] and in locating the road along the existing road.

---

**5.** *See* Tri–County's "Exceptions to the Report of Viewers/Motion for Reconsideration." Reproduced Record (R.R.) at 48a–51a. In its exceptions/motion for reconsideration, Tri–County alleged:

> 3. Tri–County respectfully suggests that the [Board] abused its discretion and/or committed an error of law when the Board concluded that: (a) [Hilltop's] proposed private road was "necessary" since [Hilltop] has a right of way over the then lands of [Wallenburg]; and (b) the Court should award [Hilltop] a private road where the current road exists.
> 4. Tri–County respectfully requests that the Court reconsider its Order dated March 31, 2008 in that it was prematurely entered effectively denying Tri–County the opportu-

nity to file exceptions to the [Board's report]. (R.R. at 48a)

**6.** Commentators observe that in statutory appeals where the necessity for post-trial practice is not clear it may be necessary to file an immediate appeal from a trial court order and also file post-trial motions or exceptions in order to preserve the right of appeal. *See* 20 G. Ronald Darlington, et al., *Pa. Appellate Practice,* § 301:21 (2008–09 ed.).

Also of note, a trial court is not divested of jurisdiction by the filing of an appeal from an interlocutory order. If an appeal is not from an appealable order, it does not divest the trial court of jurisdiction to proceed. Pa. R.A.P. 1701(b)(6).

**7.** Appellate review of a trial court's decision regarding a board of viewers' opening a pri-

## Discussion

### I. Trial Court Order

■ We first address Tri–County's assertion the trial court erred in awarding Hilltop a private road without providing Tri–County the ability to file exceptions to the Board's report and Hilltop's assertion Tri–County prematurely appealed an interlocutory order.

Tri–County asserts the trial court prematurely confirmed the Board's report. Its argument is as follows. Section 11 of the Private Road Act, 36 P.S. § 2731, provides in part, "[t]he several courts of quarter sessions shall ... [upon a request for a private road from private lands to a highway] ... direct a view to be had of the place where such road is requested, and a report thereof to be made, in the same manner as is directed by the said act of [June 13, 1836]." Section 3 of the Act of June 13, 1836, P.L. 551 (Act of 1836), 36 P.S. § 1831, provides, "[t]he viewers as aforesaid, shall make report at the next term of said court...." Finally, Section 4 of the Act of 1836, 36 P.S. § 1832, provides (with emphasis added):

> If the court shall approve of the report of viewers allowing a road, they shall direct of what breadth the road so approved shall be opened, *and at the next court thereafter the whole proceedings shall be entered on the record, and thenceforth such road shall be taken, deemed and allowed to be a lawful public road or highway, or private road,* as the case may be.

Tri–County asserts that the trial court acted prematurely in violation of the above provisions of the Act, in that it did not wait to act until the next court after the Board's report was issued.

Hilltop counters the trial court's order merely constituted confirmation *nisi,* not final confirmation from which an appeal may be taken. As a result, Tri–County's appeal is a premature appeal of an interlocutory order and therefore, this Court lacks appellate jurisdiction. *See Brophy v. Phila. Gas Works & Phila. Facilities Mgmt. Corp.,* 921 A.2d 80 (Pa.Cmwlth. 2007) (appeals are permitted only from final orders; the general rule that a final order is required before an appeal may be taken is fundamental to the exercise of jurisdiction by the appellate court is rigorously applied).

Hilltop cites *In re Brinker.* In *Brinker,* as here, the board of viewers filed a report with the trial court finding necessity to lay out and open a private road. The trial court also confirmed the report by order *nisi* the same day the Board filed it. Twenty-seven days later, the trial court entered a final order confirming the board's report. The appellants in *Brinker* filed objections to the board's report two days after the trial court's final order. The trial court dismissed the objections on the basis such post-trial motions were not permitted to challenge the board's report.

Because the trial court did not wait at least 30 days after confirmation *nisi* before entering final confirmation and because the trial court refused to consider the appellants' timely objections to the board's report, this Court held the trial court in *Brinker* erred by failing to address the appellants' objections.

In light of the holding in *Brinker,* Hilltop asserts Tri–County's appeal was fatally premature. In short, Hilltop maintains

---

vate road is limited to ascertaining the validity of the trial court's jurisdiction, the regularity of the proceedings, questions of law and whether there has been an abuse of discretion. *In re Private Road in E. Rockhill Twp., Bucks County,* 165 Pa.Cmwlth. 240, 645 A.2d 313 (1994).

Tri–County properly filed timely exceptions, but erred in filing its appeal the same day. Hilltop further asserts the trial court's July 2008 opinion stating it would have dismissed the exceptions is irrelevant. Hilltop thus asserts Tri–County appealed an interlocutory order, and this error deprives the Commonwealth Court of jurisdiction.

As stated in *Brinker*, the proper means to challenge a board's finding of necessity for a private road is to file exceptions within 30 days of the trial court's confirmation *nisi.* Here, Tri–County filed exceptions to the trial court's confirmation of the Board's report. The trial court later discovered the exceptions and explained it would have dismissed them. Before the trial court discovered the exceptions, however, Tri–County appealed the Board's finding of necessity to this Court.

 In cases where a party challenges this Court's jurisdiction arguing the order appealed from is interlocutory, the appropriate remedy is to quash the appeal. *In re Conveyance of 1.2 Acres of Bangor Mem'l Park to Bangor Area Sch. Dist.,* 130 Pa.Cmwlth. 143, 567 A.2d 750 (Pa. Cmwlth.1989). Nevertheless, in limited cases, this Court may choose not to quash an appeal for lack of an appealable order in the interests of judicial economy. *Id.*; *Rellick v. Redevelopment Authority,* 127 Pa.Cmwlth. 264, 561 A.2d 382 (1989).

*Bangor Memorial Park* is instructive. In that case, a municipality sought approval for the conveyance of park land to a school district. After hearing, the trial court entered an order on the petition, and an appeal was filed. The appealing party also filed exceptions which were never resolved. Despite the existence of outstanding exceptions, this Court declined to quash the appeal; rather, the Court disposed of the merits.

Here, the order appealed was the trial court's confirmation of the Board's report. The order is interlocutory and not within the appealable orders described in the Pennsylvania Rules of Appellate Procedure 311–313.

Nevertheless, there are several reasons why we will adopt the *Bangor Memorial Park* approach and address the merits in the present case. First, the merits were fully addressed by the Board, which held hearings, conducted a view and rendered a written report. Second, the merits were reviewed by the trial court, which confirmed the Board's report. Third, the merits of the outstanding exceptions were considered and addressed by the trial court, albeit after the appeal. Fourth, the same issues are raised on appeal as were considered by the Board and the trial court. Fifth, when questioned at oral argument about returning the case to the trial court for disposition of exceptions, the attorneys for both parties expressed a preference for action by this Court on appeal since they were aware of the trial court's intention to dismiss the exceptions. Sixth, the case has been in litigation for an extended period of time.

Under these circumstances, it is a waste of judicial resources to quash the appeal and allow the trial court to make its announced ruling. This will simply delay an inevitable second appeal to our Court. Therefore, the principle of judicial economy supports a merits review now.

## II. Board's Report

### A. Necessity for a Private Road

 In this argument, Tri–County asserts the Board erred or abused its discretion in finding the requested private road necessary despite the fact that Hilltop's deed provided for legal access anywhere across the former Wallenburg property to

a public road. Hilltop's deed provides (with emphasis added):

> All that certain lot piece or parcel of land situate lying and being in the Township of Sullivan, County of Tioga . . . and described as follows:
>
> * * *
>
> Together with the necessary right of way for ingress, egress and regress over the surrounding lands of grantors to the public road. (R.R. at 104a).

Citing Hilltop's deed, Tri–County argues Hilltop enjoys the legal right to access a public road from anywhere over the former Wallenburg property. Also, Tri–County points out this right of way would not be restricted to a 25–foot wide road as it would under the Private Road Act. Tri–County further asserts Engineer testified there is enough land north of Hilltop's property to put in a switchback road to a public road. N.T. at 47.

■ As to necessity for a private road, Tri–County asserts Section 12 of the Private Road Act requires a board of viewers to determine whether a private road is necessary. 36 P.S. § 2732. The Private Road Act does not define "necessity." However, our appellate courts interpret it as requiring any alternative access be extremely difficult or burdensome. *See, e.g., In re Packard,* 926 A.2d 557 (Pa.Cmwlth.), *appeal denied,* 596 Pa. 711, 940 A.2d 367 (2007); *see also Lobdell v. Leichtenberger,* 442 Pa.Super. 21, 658 A.2d 399 (1995); *Application of Little,* 180 Pa.Super. 555, 119 A.2d 587 (1956). Although a showing of absolute necessity is not required, mere inconvenience in the use of existing or alternative access is insufficient to establish necessity. *Id.* The taking of private property for private use can only be justified by the strictest necessity. *Graff v. Scanlan,* 673 A.2d 1028 (Pa.Cmwlth.1996).

Here Tri–County maintains Hilltop presented no credible evidence demonstrating it would be extremely difficult, burdensome or dangerous to construct a switchback road to the north of Hilltop's property. Rather, Tri–County asserts Engineer admitted this is possible. *See* N.T. at 47.

Tri–County further asserts although Hilltop used the existing road for decades because it is convenient, such convenience does not establish necessity.

Hilltop counters that the existing road over Tri–County's property is the only realistic access to its property. Further, citing *Lobdell* and *Little,* Hilltop asserts it produced sufficient evidence indicating construction of a road over the former Wallenburg property is simply not feasible at any location. In particular, sections of the proposed power line route are dangerously steep and would be extremely treacherous in inclement weather. N.T. at 37, 52.

Also, Hilltop cites *Mattei,* where the parties seeking a private road had an existing right of way to a public road, but this right of way was not feasible because the topography would make construction of the private road very expensive, and inclement weather would close the road for a portion of the year. Citing these similarities to the present case, Hilltop asserts *Mattei* applies here. Hilltop also cites *Lobdell* (allegations of dangerous conditions beyond mere inconvenience sufficient to survive demurrer as to necessity).

■ Initially, we recognize a board of viewers enjoys broad discretion in determining whether a private road is necessary. *In re Packard.* Appellate review is limited to determining the validity of the board's jurisdiction, the regularity of the proceedings, questions of law, and whether the board abused its discretion. *Id.*

Here, the record supports the Board's finding of necessity for the condemnation of a private road over Tri–County's property. Engineer testified the proposed 1100–foot road along the existing power line would have a very steep slope, thereby making it treacherous during storms and in wintertime. N.T. at 33–40. Construction of this road would cost approximately $30,000–$40,000. *Id.* Maintenance and runoff and erosion control would also be very expensive. *Id.* Further, construction may undermine nearby active electric power lines. *Id.*

Engineer further testified there were no alternative locations any more feasible than the proposed power line route.[8] *Id.* at 53. The proposed 1600–foot switchback from Hilltop's property to the public road would also create runoff and erosion problems. *Id.* at 47–48, 55. In addition, the switchback road would cost about $60,000 to construct. *Id.* at 55. Moreover, it would be difficult, if not impossible to construct a switchback road with runoff ditches within the 25–foot wide limitation for private roads. *Id.* at 56.

In view of Engineer's testimony, we hold the Board did not err or abuse its discretion in finding necessity for a private road. Absolute necessity is not required; the property need not be completely landlocked. *Lobdell; Little.* As noted, the proposed power line route would be so steep it would be dangerous in bad weather. It would also be expensive to construct and maintain; it would require extensive runoff and erosion con-

trol. Further, the proposed switchback route north of Hilltop's property would be longer, twice as expensive as the power line route, and would have even greater runoff and erosion problems. These facts are sufficient to support the Board's finding of necessity for a private road over Hilltop's property. *Driver v. Temple*, 374 Pa.Super. 389, 543 A.2d 134 (1988); *Mattei.*

Summarizing, Hilltop presented credible expert evidence showing their property is essentially landlocked; there is no realistic access to its property from a public road other than the existing road across Tri–County's property. "[A] landlocked parcel is an example of 'strictest necessity.'" *In re Laying Out a Private Road (Appeal of Zeafla)*, 405 Pa.Super.298, 592 A.2d 343, 346–47 (1991). Accordingly, we discern no error or abuse of discretion in the Board's determination that Hilltop's evidence demonstrated the requisite necessity for a private road over Tri–County's property. *Id.; Driver; Mattei.*

### B. Location

■ As to location of the road, Tri–County asserts any private road should run from the public road along Tri–County's southwestern property line to Hilltop's property. Citing Section 2 of the Act of 1836,[9] Tri–County maintains this alternative route is shorter than the existing road, would be located on relatively flat land easily capable of being converted into a private drive, and would be less injurious to Tri–County's property because it would

---

8. In addition to the power line route, Engineer also looked at a recently cut drive that stopped at the base of a steep section of the mountain. N.T. at 53. The topography of the land also rendered this route infeasible for access to Hilltop's property. *Id.*

9. Section 2 of the Act of 1836, 36 P.S. § 1785, provides:

The [board of viewers] shall view such ground, and if they shall agree that there is occasion for a road, they shall proceed to lay out the same, having respect to the shortest distance, and the best ground for a road, and in such manner as shall do the least injury to private property, and also be, as far as practicable, agreeable to the desire of the petitioners.

not pass through the middle of Tri–County's lot. Thus, Tri–County asserts this alternate access meets three of the four requirements in Section 2 of the Act of 1836, 36 P.S. § 1785.

■■■ Hilltop counters the Board must consider the four factors in 36 P.S. § 1785 for choosing a location for a private road: the shortest distance; the best ground; the least injurious to private property; and the desire of petitioner. *Appeal of Zeafla.* However, the Board need not make specific findings on these four factors as long as it is apparent from the Board's report that it considered them. *In re Private Road, Cogan Twp., Lycoming County,* 684 A.2d 237 (Pa.Cmwlth. 1996). Also, absent a discernible abuse of discretion, a reviewing court will not disturb the board's location of the road. *Id.* The board viewed the property and observed all the physical aspects of the land; therefore, it is in the best position to select the location for the road. *Id.*

Here, Hilltop maintains the Board properly determined the best route for an access road to Hilltop's property would be the existing road on level ground across Tri–County's property. As the Board noted, coming straight up the side of the mountain is an expensive and dangerous option. Also, Hilltop argues Tri–County's proposed alternative route across the southwestern portion of its property would require the sacrifice of hundreds of trees and would disturb a large amount of ground. In addition, a Tri–County member testified this proposed route is steeper than the existing road. N.T. at 133.

Hilltop further asserts the presence of an existing roadbed is an important factor to be considered in locating a private road. *See Fengfish v. Dallmyer,* 434 Pa.Super. 250, 642 A.2d 1117 (1994) (board acted wisely in following the course of existing road, which caused the least amount of

damage); *In re Private Road in E. Rockhill Twp., Bucks County,* 165 Pa.Cmwlth. 240, 645 A.2d 313 (1994) (even when an existing roadbed is longer than a proposed alternate route, the expense of constructing an alternative road is a significant factor the board may consider); *Appeal of Zeafla* (existence of a roadbed is a factor to be considered in locating a private road).

■■■ Hilltop also cites *Driver,* where the Superior Court recognized the length of roadway is only one of many factors a board of viewers may consider in opening a private road. "[T]he length of the roadway and the amount of damage caused are only two of several considerations mandated by statute." 543 A.2d at 137. "Of equal importance is the 'best ground for a road.'" *Id.*

In *Driver,* the Court noted the two proposed shorter roads would have an excessive grade and become impassable in winter months and during heavy rains. The longer route, selected by the board, would have the *least grade,* be the *least expensive to maintain,* and would be an *all-weather road.* In *Driver,* the Superior Court upheld the board's choice of the longer, all-weather road as the most suitable route.

Applying these decisions to the facts here, Hilltop asserts the Board did not err or commit an abuse of discretion by opening the private road over the existing roadbed. Hilltop contends the steep slope of the proposed power line route will result in dangerous and impassable conditions during bad weather. Also, the facts that no trees need be sacrificed and little construction, if any, would be needed to use the existing road as a private road justifies the Board's decision to open a private road over the existing roadbed instead of across Tri–County's southwestern boundary line.

■ As discussed above, the existence of a roadbed is a significant factor to be considered in locating a private road even where an existing roadbed is longer than a proposed alternate route. *E. Rockhill*; *Driver*. Cost of construction is another significant factor the Board may consider. *E. Rockhill*. Safety and all-weather access are also significant factors to be considered. *Driver*.

Here, laying the private road out across the existing roadbed involves no construction costs. Conversely, construction of a roadbed across Tri–County's southwestern property line would require trees be taken down and substantial excavation work performed on Tri–County's property. In addition, the existing road provides all-weather and much safer access than the alternative routes Tri–County proposed. Although Hilltop's road will bisect Tri–County's hunting/recreation area, "[t]he use to which the land being taken has been put goes to the issue of damages, not the propriety of the route chosen, so long as the choice is otherwise proper." *Appeal of Zeafla*, 592 A.2d at 347; *see also Driver* (same).

■ A reviewing court will not disturb a board of viewers's decision regarding location absent a palpable abuse of discretion. *Cogan Twp.* For the above reasons, the trial court did not err in confirming the Board's report recommending opening a private road along the existing road. *E. Rockhill*; *Driver*.

Discerning no error or abuse of discretion in the Board's report finding necessity for the private road and laying out of the road along the existing roadbed across Tri–County's property, we affirm the trial court's order on the merits of Tri–County's appeal.

### O R D E R

AND NOW, this 28th day of January, 2009, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Tioga County is **AFFIRMED.**